**FILED**

APR 2 8 2008

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Clerk, U.S. District and Bankruptcy Courts

**No. 07-1327**

Case: 1:08-cv-00731
Assigned To : Kennedy, Henry H.
Assign. Date : 4/28/2008
Description: Pro Se General Civil On:

**September Term 2007**

**TRAN-49USC30162**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    APR 2 2 2008

CLERK

William B. Trescott,

    Petitioner

    v.

Federal Highway Administration and Secretary
of Transportation,

    Respondents

## PETITION FOR REVIEW FROM AN ORDER OF
## THE FEDERAL HIGHWAY ADMINISTRATION

**BEFORE:**   Henderson, Rogers, and Kavanaugh, Circuit Judges

## J U D G M E N T

This petition for review of an order of the Federal Highway Administration was considered on the agency record and the briefs filed by the parties. See Fed. R. App. P. 34(a)(2); D.C. Cir. Rule 34(j). It is

**ORDERED AND ADJUDGED** that the petition be transferred to the District Court for the District of Columbia. The petitioner seeks review of regulations issued pursuant to the agency's authority under 23 U.S.C. §§ 127, 315 and 49 U.S.C. §§ 31111, 31112, and 31114. This court lacks subject-matter jurisdiction because none of these statutes falls within those listed in the Hobbs Act, 28 U.S.C. § 2342(3)(A), and the authority exercised by the Federal Highway Administration was not transferred from the Interstate Commerce Commission to the Department of Transportation. See Aulenback, Inc. v. FHWA, 103 F.3d 156 (D.C. Cir. 1997) (holding that the Hobbs Act only grants the courts of appeals exclusive jurisdiction to review actions of Department of Transportation agencies if the action is taken pursuant to authority that was transferred from the Interstate Commerce Commission); Owner-Operator Independent Drivers Ass'n v. Pena, 996 F.2d 338 (D.C. Cir. 1993) (same). Therefore, the petitioner must seek review in district court pursuant to the Administrative Procedure Act, 5 U.S.C. § 704, under federal question jurisdiction, 28 U.S.C. § 1331.

A True copy:

United States Court of Appeals
for the District of Columbia Circuit

By: _____ Deputy Clerk

1

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 07-1327**                     **September Term, 2007**

      The Clerk is directed to transmit the original file and a certified copy of this order to the United States District Court for the District of Columbia.

      Pursuant to D.C. Cir. Rule 36, this disposition will not be published.

<u>**Per Curiam**</u>

**General Docket**
**United States Court of Appeals for DC Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 07-1327<br>Trescott, William v. FHA, et al<br>**Appeal From:** Department of Transportation, National Transportation Safety Board<br>**Fee Status:** Fee Paid | **Docketed:**<br>08/16/2007 |

**Case Type Information:**
   **1)** Petition for Review
   **2)** Review
   **3)** -

**Originating Court Information:**
   **District:** TRAN-1 : TRAN-49USC30162
   **Date Filed:**

**Current Cases:**
   None

**Panel Assignment:**   Not available

---

| | |
|---|---|
| William B. Trescott<br>      Petitioner | William B. Trescott<br>Direct: 979-244-3134<br>[COR LD NTC Pro Se]<br>8028 Farm to Market Road 457<br>Bay City, TX 77414-0000 |
|     v. | |
| Federal Highway Administration<br>      Respondent | Kelsi Brown Corkran<br>Direct: 202-514-3159<br>[COR LD NTC Gvt Atty US Agency]<br>U.S. Department of Justice<br>(DOJ) Office of the Attorney General<br>Firm: 202-514-2001<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Jeffrey S. Bucholtz<br>Direct: 202-514-3045<br>[COR Gvt Atty US Agency]<br>U.S. Department of Justice<br>(DOJ) Torts Branch, Civil Division<br>Ben Franklin Station<br>PO Box 340<br>Washington, DC 20044-0000<br><br>Mark B. Stern |

Direct: 202-514-5089
[COR Gvt Atty US Agency]
U.S. Department of Justice
(DOJ) Office of the Attorney General
Room 7531
Firm: 202-514-2001
950 Pennsylvania Avenue, NW
Washington, DC 20530

Secretary of Transportation
Respondent

Kelsi Brown Corkran
Direct: 202-514-3159
[COR LD NTC Gvt Atty US Agency]
(see above)

Jeffrey S. Bucholtz
Direct: 202-514-3045
[COR Gvt Atty US Agency]
(see above)

Mark B. Stern
Direct: 202-514-5089
[COR Gvt Atty US Agency]
(see above)

---

William B. Trescott,

    Petitioner

    v.

Federal Highway Administration; Secretary of Transportation,

    Respondents

---

| | |
|---|---|
| 08/16/2007 | PETITION FOR REVIEW CASE docketed. Petition for Review filed by Petitioner William B. Trescott. [1061259-1] |
| 08/16/2007 | INITIAL SUBMISSIONS filed by Petitioner William B. Trescott [1061274-1] : docketing statement. (Attached to petition for review). |
| 08/20/2007 | CLERK'S ORDER filed [1061268] directing Petitioner to file [1061268-1]: certificate of counsel due 9/19/07 for William B. Trescott; statement of issues due 9/19/07 for William B. Trescott; lower court decision due 9/19/07 for William B. Trescott; any procedural motions due 9/19/07 for William B. Trescott; deferred appendix notice due 9/19/07 for William B. Trescott; any dispositive motions due 10/4/07 for William B. Trescott;, directing Respondent to file [1061268-2]: any procedural motions due 9/19/07 for FHA ; appearance form due 10/4/07 for FHA; certified index to the record due 10/4/07 for FHA; any dispositive motions due 10/4/07 for FHA. [Entry Date: 8/20/07] |

| 09/04/2007 | MOTION filed (5 copies) by Petitioner William B. Trescott (certificate of service by mail dated 8/28/07) to expedite case [1065038-1]. Response due on 9/13/07 . |
| 09/04/2007 | INITIAL SUBMISSIONS filed by Petitioner William B. Trescott [1065039-1] : certificate of counsel; statement of issues; lower court decision; deferred appendix notice ( Deferred Appendix needed = n ); . |
| 09/13/2007 | ENTRY OF APPEARANCE filed by Attorneys Mark B. Stern and Kelsi Brown Corkran for Respondents Secy Trans and FHA [1067524-1]. |
| 09/13/2007 | RESPONSE filed [1068331-1] (5 copies) by respondent FHA et al. (certificate of mail service dated 9/13/07) to a motion expedite case [1065038-1]. |
| 10/04/2007 | INITIAL SUBMISSIONS filed by Respondent FHA [1071735-1]: certified index to the record. |
| 10/26/2007 | SUPPLEMENT to [1076227-1] motion expedite case [1065038-1] filed by Petitioner William B. Trescott. |
| 11/16/2007 | PER CURIAM ORDER filed [1080752] denying motion expedite case [1065038-1] filed by William B. Trescott. Petitioner has not satisfied the stringent standards required for such relief. See D.C. Circuit Handbook of Practice and Internal Procedures 33-34 (2006). Before Judges Sentelle, Randolph, Brown. [Entry Date: 11/16/07] |
| 12/03/2007 | BRIEF filed by Petitioner William B. Trescott [1085207-1] . Copies: 15 . Certificate of service date 11/28/07 . |
| 12/27/2007 | CLERK'S ORDER filed [1088412] that the remainder of the briefing schedule be established as follows: [1088412-1] : Respondent's brief due on 2/1/08; Petitioner's reply brief due on 2/15/08. Date: 12/27/07] |
| 02/01/2008 | BRIEF filed by Respondent FHA [1097106-1] . Copies: 15 . Certificate of service date 2/1/08 . |
| 02/07/2008 | ERRATUM to [1098415-1] respondents' brief [1097106-1] filed by Respondents FHA and Secy Trans. |
| 02/14/2008 | REPLY BRIEF filed by Petitioner William B. Trescott [1099217-1]. Copies: 15. Certificate of mail service date 2/14/08. |
| 04/08/2008 | PER CURIAM ORDER filed [1109828] disposing of case without oral argument on the basis of the record and presentations in the brief pursuant to D.C.Cir.Rule 34(j). Judge Henderson, Rogers and Kavanaugh [07-1327] |
| 04/22/2008 | PER CURIAM JUDGMENT filed [1112297] (without memorandum) that the petition be transferred to the District Court for the District of Columbia . (SEE JUDGMENT FOR DETAILS) The Clerk is directed to transmit the original file and a certified copy of this order to the United States District Court for the District of Columbia. Judge Henderson, Rogers and Kavanaugh [07-1327] |
| 04/22/2008 | LETTER SENT [1112300] to transfer case [Transfer Court:USDC for DC] . Documents Sent: Clerk's File and certified copy of order transferring case [07-1327] |

**ORIGINAL**

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 07-1327**                                    **September Term 2007**

**TRAN-49USC30162**

**Filed On:**

William B. Trescott,

    Petitioner

    v.

Federal Highway Administration and Secretary
of Transportation,

    Respondents

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    APR 08 2008

**CLERK**

**BEFORE:**   Henderson, Rogers, and Kavanaugh, Circuit Judges

## O R D E R

    The court concludes, on its own motion, that oral argument will not assist the court in this case. Accordingly, the court will dispose of the petition for review without oral argument on the basis of the record and the presentations in the briefs. See D.C. Cir. Rule 34(j).

**Per Curiam**

# United States Court of Appeals

District of Columbia Circuit
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue N.W.
Washington, D.C. 20001-2866

Mark J. Langer
Clerk

April 22, 2008

General Information
(202) 216-7000

Nancy Mayer-Whittington, Clerk
United States District Court
for the District of Columbia
E. Barrett Prettyman Courthouse
333 Constitution Ave., NW
Washington, DC 20001

Re:    07-1327, <u>Trescott, William v. FHA, et al</u>

Dear Clerk of Court:

Pursuant to the order of this court filed April 22, 2008, a certified copy of which is enclosed, we are transmitting the court's original file. The docketing fee has been paid.

Please acknowledge receipt of the file by signing and returning to this office the enclosed copy of this letter.

Sincerely yours,

BY:    /s/
Michael C. McGrail
Deputy Clerk

Receipt Acknowledged:

_____        _____
(Date)                         (Signature)

Received
Mail Room

AUG 1 6 2007

United States Courts of Appeals
District of Columbia Circuit

1061259

**UNITED STATES COURT OF APPEALS**
**DISTRICT OF COLUMBIA CIRCUIT**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   AUG 1 6 2007

CLERK

WILLIAM B. TRESCOTT            )
                               )
            Petitioner,        )
                               )
    v.                         )
                               )
THE FEDERAL HIGHWAY            )
ADMINISTRATION,                )          07- 1327
THE SECRETARY OF          P    )
TRANSPORATION,                 )
and THE UNITED STATES,         )
                               )
            Respondents.       )

**PETITION FOR REVIEW**

I, William B. Trescott hereby petition this Court for review of the final

rule issued by respondent Federal Highway Administration (FHWA) entitled

**"Size and Weight Enforcement and Regulations;** Final Rule" entered

February 20th, 2007 in volume 72 of the Federal Register on page 7741.

Because my objections filed in **Docket No. FHWA–2006–24134-4, RIN**

**2125–AF17** during this rulemaking were not acted on, I electronically filed a

timely petition for reconsideration of this final rule, filed in **Docket No.**

**FHWA–2006–24134-70,** which was received by FHWA on March 8th, 2007

and sent a paper copy by certified mail to the Secretary of Transportation

Mary Peters which was received on March 13th, 2007.

As of August 14th, 2007, neither FHWA or Secretary Peters had responded to that petition as required by statute. 49 U.S.C. § 30162. On that date, I sent to the agency electronically and to the Secretary by overnight delivery a Notice of Withdrawal of Petition for Reconsideration which was received by FHWA on August 14th, 2007.

Respectfully submitted,

_____
William B. Trescott

a private citizen residing at
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

2 of 2

## CERTIFICATE OF SERVICE

I certify that on August 14th, 2007, I served one copy each of the

foregoing Petition for Review by certified mail on the following:

James Ray
Chief Counsel
Federal Highway Administration
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

D.J. Gribbin
General Counsel
U.S. Department of Transportation
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

Alberto R. Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Respectfully submitted,

_____

William B. Trescott
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG 1 6 2007

RECEIVED

07- 1337

# United States Court of Appeals

### District of Columbia Circuit

## DOCKETING STATEMENT

*Administrative Agency Review Proceedings*
*(To be completed by appellant/petitioner)*

1. CASE NO. _____   2. DATE DOCKETED _____

3. CASE NAME      William B. Trescott                    Federal Highway Administration
   (lead parties only) _____ v. _____

4. TYPE OF CASE:   [X] Review   [ ] Appeal   [ ] Enforcement   [ ] Complaint   [ ] Tax Court

5. IS THIS CASE REQUIRED BY STATUTE TO BE EXPEDITED? YES X_____   NO _____

   If YES, cite statute: 49 USC §10101(15) (note: case pertains to FHWA regulation of intermodal rail vehicles.)

6. CASE INFORMATION:

   a. Identify agency whose order is to be reviewed: Federal Highway Administration

   b. Give agency docket or order number(s): Docket No. FHWA-2006-24134, RIN 2125-AF17

   c. Give date(s) of order(s): February 20th, 2007

   d. Has a request for rehearing or reconsideration been filed at the agency? YES X_____ NO_____
      If so, when was it filed? March 8th, 2007  By whom? William B. Trescott
      Has the agency acted?  YES _____   NO X_____   If so, when? _____

   e. Identify the basis of appellant's/petitioner's claim of standing. See D.C. Cir. Rule 15(c)(2): 49 U.S.C. § 30162

As a trucker by trade endangered by the aforementioned rules, the Secretary failed to respond to my petition to reconsider.

   f. Are any other cases involving the same underlying agency order pending in this Court or in any other Court?

      YES _____   NO X_____   If YES, identify case name(s), docket number(s), and court(s): _____

   g. Are any other cases, to counsel's knowledge, pending before the agency, this Court, another Circuit Court, or the Supreme Court which involve *substantially the same issues* as the instant case presents? YES _____   NO X_____
      If YES, give case name(s) and number(s) of these cases and identify court/agency:

   h. Have the parties attempted to resolve the issues in this case through arbitration, mediation, or any other alternative for dispute resolution?  YES _____   NO X_____   If so, provide the name of the program and the dates of participation. _____

Signature _____   Date  8-14-7

Name of Party (Print) William B. Trescott

Name of Counsel for Appellant/Petitioner (Print) _____ (per se) _____   Firm ___ (per se)

Address 8028 HWY 457, Bay City, TX 77414

E-Mail  trescott@truckingvideo.com

Phone  979.244.3134 _____ Fax No. _____

Note:   If counsel for any other party believes that the information submitted is inaccurate or incomplete, counsel may so advise
        the Clerk within 7 calendar days by letter, with copies to all other parties, specifically referring to the challenged
        statement. An original and one copy of such letter should be submitted. Attach a certificate of service to this form.

[USCADC Form 7 (Rev. Jul 2007)]

**UNITED STATES COURT OF APPEALS**
DISTRICT OF COLUMBIA CIRCUIT

-----------------------------------------

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED AUG 2 0 2007

CLERK

No.    07-1327                                     September Term 2006

William B. Trescott, Petitioner
v.
Federal Highway Administration, et al., Respondents

O R D E R

This case was filed and docketed on 8/16/07. The case was filed as a petition for review and was assigned the above number.

It is **ORDERED** that petitioner(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

9/19/07 Statement of issues to be raised.
9/19/07 Certificate of Counsel (Cir. R. 28(a)(1)).
9/19/07 Two copies of the underlying decision.
9/19/07 Statement as to whether or not a deferred appendix under
        F.R.A.P. 30(c) will be utilized. (A motion will not be necessary.)
9/19/07 Original and four copies of procedural motions which would affect
        the calendaring of this case.
10/4/07 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that respondent(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

10/4/07 Entry of Appearance form.
10/4/07 Certified Index to Record.
9/19/07 Original and four copies of procedural motions which would affect
        the calendaring of this case.
10/4/07 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that briefing in this case is deferred pending further order of the Court.

The Clerk is directed to certify and transmit a copy of this order, along with the petition for review, to respondent(s).

FOR THE COURT:
Mark J. Langer, Clerk

BY:     _____
        Heather T. Stockslager, Deputy Clerk



Received
Mail Room

SEP - 4 2007

United States Court of Appeals
District of Columbia

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

SEP  4 2007

CLERK

**WILLIAM B. TRESCOTT**                )
                                       )
                      Petitioner,      )
                                       )
**v.**                                 )
                                       )
**THE FEDERAL HIGHWAY**                )      No. 07-1327
**ADMINISTRATION,**                    )
**THE SECRETARY OF**                   )
**TRANSPORATION,**                     )
**and THE UNITED STATES,**             )
                                       )
                      Respondents.     )

### MOTION TO EXPEDITE

On Petition for Review of a Final Rule
Issued by the Federal Highway Administration

ORIGINAL

(m - 28)
4 w

The Federal Highway Administration has promulgated rules regulating

intermodal rail vehicles as defined in 49 U.S.C. §§ 10102(6)(A) & (9)(A),

despite statutory prohibitions in 49 U.S.C. §§ 13503(b)(1) & 13506(a)(11).

Research carried out under 49 U.S.C. § 20103 has revealed an <u>emergency</u>

<u>situation</u> involving preventable loss of life—that trucks used as locomotives

are <u>prohibited</u> from complying with locomotive safety standards.  69 FR

63891 *et seq*. "In regulating the railroad industry, it is the policy of the

United States Government…to provide for the <u>expeditious handling and</u>

<u>resolution</u> of all proceedings required or permitted to be brought under this

1

part." 49 U.S.C. § 10101(15) (emphasis added).

The Secretary failed to respond to my Petition to Reconsider within 120 days as required under 49 U.S.C. § 30162(d) even though the House Subcommittee on Surface Transportation held its first motor carrier safety hearing in five years[1] <u>exactly 120 days to the day</u> after my Petition was received by the Secretary on March 13th. Rather than an announcement that intermodal vehicles and modern safety features on trucks would be decriminalized, the Subcommittee was instead made to hear a <u>misleading statement</u> from her Federal Motor Carrier Safety Administrator, that "2005 enjoyed one of the lowest large-truck fatality rates in 30 years"[2] when, in fact, **<u>trucker fatalities have risen 17% in the past three years</u> and reached a <u>16 year high in 2005</u>!**[3] Despite record high rates of seat belt use and several lawsuits to prevent it,[4] the number of truck drivers killed in multi-vehicle crashes rose 36% in only three years—<u>a 30% real increase</u> even after adjusting for changes in tonnage and miles driven. Preliminary examinations

---

[1] No truck safety hearing was held by Republicans between 2002 and 2007. The New York Times alleged that from 2000 to 2006, the trucking industry directed more than $14 million in campaign contributions to Republicans and its donations and lobbying fees were about $37 million from 2000 to 2005. (Stephen Labaton, Dec. 3, 2006)

[2] July 11th, 2007 testimony of FMCSA Administrator John Hill

[3] Fatality Analysis Reporting System, www-fars.nhtsa.dot.gov

[4] *Public Citizen v. FMCSA,* 374 F.3d 1209, 1218, D.C. Cir. 2004; *Advocates for Highway and Auto Safety v. FMCSA*, DC Court of Appeals, No. 04-1233, Dec. 2005; *OOIDA v. FMCSA*, DC Court of Appeals, No. 06-1035, July 2007.

2

suggest that a bridge collapse in Minneapolis, killing a dozen people, was caused by a proliferation of obsolete long haul trucks resulting from modern intermodal rail vehicles not being available.

While *Trescott v. Peters,* No. 05cv00678, has been mooted by subsequent developments being petitioned for review in the present case and therefore should not be appealed, in the recent *Massachusetts v. EPA,* the Supreme Court reaffirmed, quoting *Lujan* v. *Defenders of Wildlife*, 504 U. S., at 572,

> "...a litigant to whom Congress has 'accorded a procedural right to protect his concrete interests' ...the right to challenge agency action unlawfully withheld, [such as 42 U.S.C.] § 7607(b)(1)—'can assert that right without meeting all the normal standards for redressability and immediacy,' *ibid.* When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant. *Ibid*".
> *Massachusetts v. EPA,* 549 U. S. ___(2007) (slip op., at 14).

District Court did not adequately consider my standing as a person who had been granted a patent on railroad technology.[5]  A patent is more than a procedural right.  It is an Article I exclusive right granting a quasi-sovereign interest—the ability to control the behavior of licensees.

35 U.S.C. §§ 271(d)(2) & 296(a).

---

[5] US Pat. No. 6,776,299—*Automatic Intermodal Railway Car Coupler*

3

In *Massachusetts,* the Chief Justice stated,

> The Court, in effect, takes what has always been regarded as a *necessary* condition for *parens patriae* standing—a quasi-sovereign interest—and converts it into a *sufficient* showing for purposes of Article III (Roberts slip op., at 5).

Therefore, *Trescott v. Peters* should not have been dismissed and delays in handling my complaint have already become excessive.

At issue here is whether self employed skilled professionals who own and operate dangerous equipment, such as truckers, are allowed to invent and utilize safety devices to reduce the hazards in their workplaces. Air bags, seat belt laws, and the replacement of compact cars with larger, heavier sport utility vehicles have significantly improved the safety of motorists. Truckers have a 14th Amendment right to the same benefits. It is suspected that the President appointed police officers and other unskilled administrators to impersonate industrial safety professionals in violation of 49 U.S.C. § 113(c) so that trucking industry productivity could be maximized by violating 49 U.S.C. § 113(b)—a statute the Federal Highway Administration is not directly obligated to obey. **A qualified Federal Motor Carrier Safety Administrator would never have allowed the Federal Highway Administration to promulgate rules related to motor carrier safety.** None of the President's appointees had accumulated the hundreds of

4

thousands of crash free miles and numerous safety awards a motor carrier safety professional would normally need to qualify for employment advising other truckers on matters concerning their personal safety. The industrial safety profession requires a knowledge of ergonomics and working conditions having nothing in common with business administration or law enforcement. The increase in fatalities thus appears to be deliberate.

The issue raised here is not unique to trucking. In testimony before the House Committee on Oversight and Government Reform, the 17th Surgeon General of the United States stated,

> "[T]he nation's doctor has been marginalized and relegated to a position with no independent budget, and with supervisors who are political appointees with partisan agendas. Anything that doesn't fit into the political appointees' ideological, theological, or political agenda is ignored, marginalized, or simply buried."[6]

It is not illegal for the President to appoint an unskilled person to supervise a surgeon, but appointing an unskilled person to impersonate a motor carrier safety professional definitely is! 49 U.S.C. § 113(c). More than eight hundred truckers and four thousand motorists and pedestrians are killed by trucks each year. Approximately twenty Americans will be killed each business day this case is delayed. Therefore, this case has the

---

[6] Richard H. Carmona M.D., M.P.H., FACS, July 10th, 2007

5

characteristics of an on-going crime and expedited handing is warranted.

Due to the number of lives at stake, <u>a deferred appendix as allowed under F.R.A.P. 30(c) will not be utilized</u>. I am prepared to serve a brief with appendices <u>immediately</u> if electronic case filing is allowed and within one week if ordered to do so by other means.

Respectfully Submitted August 28th, 2007

William B. Trescott

Author of:
*So You Want to Drive a Truck?*
*Sargent Texas Reckless Driving Video*
*How to Succeed as an Owner-Operator*
*The Secretary of Transportation's Message to Truckers*
*Creation of a Minority Group—The New Danger in America's Trucks*
Congressman Ron Paul's *'The Safer Truck Act'*
(HR 1248, 108th Congress; HR 2083, 107th Congress)
Inventor of:
*Self-loading Vehicle for Shipping Containers*
(U.S. Pats. 6,910,844 & 6,840,724)
*Automatic Intermodal Railway Car Coupler*
(U.S. Pats. 6,776,299 & 7,070,062)
*Child Safe Stackable Shelf Bin*
(U.S. Pat. 6,494,313)
*www.truckingvideo.com*
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

6



**UNITED STATES COURT OF APPEALS**

**DISTRICT OF COLUMBIA CIRCUIT**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

SEP 4 2007

CLERK

| | |
|---|---|
| WILLIAM B. TRESCOTT | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| THE FEDERAL HIGHWAY | ) |
| ADMINISTRATION, | ) |
| THE SECRETARY OF | ) |
| TRANSPORATION, | ) |
| and THE UNITED STATES, | ) |
| | ) |
| Respondents. | ) |

No. 07-1327

**ORIGINAL**

On Petition for Review of a Final Rule Issued by
the respondent Federal Highway Administration

### PETITIONER'S CERTIFICATE OF COUNSEL

Pursuant to D.C. Circuit Rule 28(a)(1) and Federal Rule of Appellate Procedure 26.1, petitioner certifies as follows:

**A. Parties**

I, William B. Trescott, a private citizen who has not issued debt securities to the public, am a trucker by trade endangered by the following rules whom the Department of Commerce has issued five patents for safer intermodal technology which have been diminished in value by these rules, and who participated in this rulemaking being petitioned for review for the purpose of protecting the lives of myself and others.  As a small entity

1

adversely affected by final agency action, I am entitled to judicial review.

5 U.S.C. § 611(a)(1).

Respondents are the Federal Highway Administration, the Secretary of Transportation, and The United States.

## B. Rulings Under Review

I seek a review of the Size and Weight Enforcement and Regulations Final Rule (Docket No. FHWA–2006–24134, RIN 2125–AF17) entered in the Federal Register on February 20, 2007 at 72 FR 7741.

## C. Related Cases

This case has never been before this court or any other court. However, a closely related case was formerly before this court. In January 2006, I filed a petition for writ of mandamus, No. 06-5004, to compel District Court to rule *in re Trescott v. Mineta* which was denied by this court on February 24th, 2006.

In *Trescott v. Mineta,* No. 05cv00678, later restyled *Trescott v. Peters,* Fed. R. Civ. P. 25(d)(1), I filed suit under *The Federal Railroad Safety Act of 1970,* 49 U.S.C. § 20104(c), to compel Secretary of Transportation Norman Mineta to implement Section 5001 of *The Intermodal Surface Transportation Efficiency Act of 1991,* 49 U.S.C. § 302(e), a bill which Secretary Mineta

2

personally sponsored himself when he was Chairman of the House

Transportation Committee.[1]  District Court dismissed this case nine days after

it was mooted by publication of the final rule being petitioned for review in

the present case:

## STATEMENT OF ISSUES

Whether the commercial motor vehicle size and weight regulations are

arbitrary and capricious and contrary to law because they—

(a) ban certain safety devices on the basis of the size and weight of the

devices rather than a scientific assessment of their efficacy in reducing

death and injury;

(b) ban certain heavy duty suspension components on the basis of the

size and weight of the components rather than a scientific assessment

of their efficacy in reducing or eliminating highway damage caused by

heavy vehicles;

(c) ban certain safety devices and heavy duty suspension components

allowed on recreational vehicles under 23 C.F.R. 658.5, and

---

[1] Norman Mineta's predecessor, Rodney Slater, pledged to reduce truck fatalities by 50% within ten years after I gave Secretary of Transportation Federico Peña two videos showing how truck fatalities could be reduced.  Secretary Slater was head of Secretary Peña's Office of Motor Carriers at the time.  The meeting was arranged by the Owner Operator Independent Drivers Association in 1994.

3

recommended in Department Of Labor safety standards for industrial vehicles, 29 C.F.R. 1910.178(a)(2)(Appendix A-4.2 & 7.1), and required by *The Rail Safety Enforcement and Review Act of 1992* Pub. L. 102-36549 (49 C.F.R. Parts 229 and 238).

(d) were promulgated "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Congress established a procedural requirement that only a "person with professional experience in motor carrier safety" may promulgate rules related to motor carriers or motor carrier safety. 49 U.S.C. §§ 113(c) & (f)(1).

## SUMMARY OF ARGUMENT

The Federal Highway Administration's assertions that commercial motor vehicle safety is not related to motor carrier safety, 72 FR 7745, that commercial motor vehicles are "different" than the vehicles used by motor carriers, 72 FR 7746, that recreational vehicles used for commercial purposes are not commercial vehicles, 72 FR 7742, that trucks towing campers are commercial vehicles, *ibid.*, that divisible loads are non divisible loads, *ibid.*, and that saddlemounts without fullmounts are saddlemounts with fullmounts, 72 FR 7743, make this agency action arbitrary and capricious because it relied on factors that Congress has not intended for it to consider, such as the

4

opinions of individual congressmen, 72 FR 7743, it has entirely failed to

consider an important aspect of the problem, such as stability calculations,

*ibid.*, and because its decision is so implausible that it could not be ascribed

to a difference in view or a product of agency expertise.  *United States v.*

*Garner* (1985) 767 F2d 104.

**Agency action is invalid if based, even in part, on pressure from**
**Congressional sources; this is especially law where invasive**
**Congressional source has financial leverage on involved agency...**
**in form of post enactment statements communicated directly and**
**indirectly by Congressmen.**
  *Texas Medial Assoc. v. Mathews* (1976, WD Tex) 408 F Supp 303.

Respectfully submitted August 28th, 2007,

_____
William B. Trescott
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

5

## CERTIFICATE OF SERVICE

I, William B. Trescott, hereby certify that on  August 28th, 2007, I

caused to be served a copy of the foregoing Certificate of Counsel and

Motion to Expedite on the following by first class mail:

James Ray
Chief Counsel
Federal Highway Administration
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

D.J. Gribbin
General Counsel
U.S. Department of Transportation
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

Alberto R. Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

_____
William B. Trescott

6

individual right, has stated, "Although, as we have held, the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." *U.S. v. Emerson*, 270 F.3d 203 (5th Cir. 2001).

The FAA continues to believe that the possession of weapons by space flight participants on board a suborbital rocket poses an unacceptably high risk to the integrity of the vehicle and the safety of the public, and that the rule is consistent with the Second Amendment. In proposing the rule, we pointed out that "[s]ecurity restrictions currently apply to passengers for airlines. Some of the restrictions prohibit a person carrying explosives, firearms, knives, or other weapons from boarding an airplane. Similar types of security restrictions for launch or reentry vehicles would contribute to the safety of the public by preventing a space flight participant from potentially interfering with the flight crew's ability to protect the public." 70 FR 77262–01, 77271. In response to the comment regarding the Second Amendment, we added that "in 1958, Congress made it a criminal offense to knowingly carry a firearm onto an airplane engaged in air transportation. 49 U.S.C. 46505." 71 FR at 75626. The FAA thus has authority to issue this rule.

## Correction

In final rule FR Doc. No FAA–2005–23449, published on December 15, 2006 (71 FR 75616), make the following correction:

On page 75626, in the third column, fourth full paragraph, lines 16 through 20, correct, "Additionally, nearly all courts have also held that the Second Amendment is a collective right, rather than a personal right. Therefore, despite the Second Amendment collective right to bear arms, the FAA has" to read "By analogy, and for the reasons given when the FAA issued its human space flight requirements, the FAA has, consistent with the right to bear arms secured by the Second Amendment."

\*    \*    \*    \*    \*

Issued in Washington, DC, on February 14, 2007.

**Rebecca MacPherson,**

*Assistant Chief Counsel for Regulations.*
[FR Doc. E7–2851 Filed 2–16–07; 8:45 am]
**BILLING CODE 4910-13-P**

---

# DEPARTMENT OF TRANSPORTATION

## Federal Highway Administration

## 23 CFR Parts 657 and 658

**[FHWA Docket No. FHWA–2006–24134]**

**RIN 2125–AF17**

## Size and Weight Enforcement and Regulations

**AGENCY:** Federal Highway Administration (FHWA), DOT.

**ACTION:** Final rule.

**SUMMARY:** This final rule amends the regulations governing the enforcement of commercial vehicle size and weight to incorporate changes enacted in the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA–LU); the Energy Policy Act of 2005, and; the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006. This final rule adds various definitions; corrects obsolete references, definitions, and footnotes; eliminates redundant provisions; amends numerical route changes to the National Highway designations; and incorporates statutorily mandated weight and length limit provisions.

**DATES:** This final rule is effective March 22, 2007.

**FOR FURTHER INFORMATION CONTACT:** Mr. William Mahorney, Office of Freight Management and Operations, (202) 366–6817, or Mr. Raymond Cuprill, Office of the Chief Counsel (202) 366–0791, Federal Highway Administration, 400 Seventh Street, SW., Washington, DC 20590. Office hours are from 7:45 a.m. to 4:15 p.m., e.t., Monday through Friday, except Federal holidays.

**SUPPLEMENTARY INFORMATION:**

### Electronic Access

Internet users may access this document, the notice of proposed rulemaking (NPRM), and all comments received by the U.S. DOT Docket by using the universal resource locator (URL) *http://dms.dot.gov*. It is available 24 hours each day, 365 days each year. Electronic submission and retrieval help and guidelines are available under the help section of the Web site.

An electronic copy of this document may also be downloaded by accessing the Office of the Federal Register's home page at: *http://www.archives.gov* or the Government Printing Office's Web page at *http://www.gpoaccess.gov/nara*.

### Background

The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA–LU) (Pub. L. 109–59, 119 Stat. 1144), the Energy Policy Act of 2005 (Pub. L. 109–58, 119 Stat. 544), and the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006 (Pub. L. 109–115, 119 Stat. 2396) enacted size and weight provisions concerning auxiliary power units, custom harvesters, over-the-road buses, and drive-away saddlemount vehicle combinations.

Additionally, the transfer of motor carrier safety functions to the Federal Motor Carrier Safety Administration (FMCSA) established by the Motor Carrier Safety Improvement Act of 1999 (MCSIA) (Pub. L. 106–159, 113 Stat. 1748) affected the internal organizational structure of the FHWA. Although the responsibility for commercial motor vehicle size and weight limitation remained in the FHWA, the references in the regulations to the old FHWA's Office of Motor Carriers (OMC) and its officials are obsolete. This action updates these references to reflect the changes in the agency's organizational structure.

### Discussion of Comments Received to the Notice of Proposed Rulemaking (NPRM)

On May 1, 2006, the FHWA published an NPRM in the **Federal Register** at 71 FR 25516 to provide an opportunity for public comment on the proposed changes to 23 CFR Parts 657 and 658. In response to the NPRM, the FHWA received 39 comments. Commenters included 8 State enforcement agencies, 9 industry associations, 4 members of Congress, 14 individuals, a union (multiple members), a law firm representing a trucking company, one intercity bus company, and an association of State transportation officials. The FHWA considered each of these comments in adopting this final rule. The changes made in response to those comments are identified and addressed under the appropriate sections below.

### Section-by-Section Discussion of the Proposals

#### Part 657

*Section 657.1 Purpose*

Michigan DOT (MDOT) expressed concerns about using the terms "Federal-aid Interstate, Federal-aid primary, Federal-aid Secondary, or Federal-aid Urban Systems," which are

no longer used, to describe the size and weight enforcement program, and suggested using the term "National Highway System" in their place.

*FHWA Response:* MDOT is correct that the terms identified are no longer generally used. However, to ensure the clarity and applicability of section 657.1, we chose to retain the terms because they are still used in 23 U.S.C. 141(a), and thus in 23 CFR 657.3, to define the extent of each State's enforcement obligation. We believe that using the term National Highway System, which did not exist on October 1, 1991, is not used in 23 U.S.C. 141, and is no longer identical to the highways systems listed in proposed section 657.1, would generate substantial confusion.

**Part 658**

*Section 658.5   Definitions*

Commercial Motor Vehicle

The FHWA proposed to clarify that recreational vehicle movements that include transportation to or from the manufacturer for customer delivery, sale, or display purposes are not covered by the definition of commercial motor vehicle for the purposes of these regulations. Five commenters, including Former Congressman Bud Shuster, the National RV Dealers Association, the National Automobile Dealers Association (NADA), the Ohio State Police, and the Illinois DOT, expressed support for the proposal to exclude recreational vehicles even when operated for a commercial purpose. Two commenters suggested that the section should be clarified to include recreational vehicle dealers as well as manufacturers.

The NADA and the Texas DOT raised concerns regarding what constitutes a recreational vehicle. Texas DOT asked whether travel trailers, and companies who transport them, were to be excluded as well. Additionally, the NADA suggested that FHWA include a definition of recreational vehicle, and the Ohio State Police requested a 3-year grace period for States to comply with any new definition.

*FHWA Response:* The FHWA believes that the same rationale applies equally to recreational vehicle dealers and manufacturers. We are therefore including dealers as well as manufacturers in this provision. Further, it is our intent to include motorized vehicles operating under their own power used only for camping or other recreational activities in this provision. However, we do not intend to exclude all third party commercial entities that transport recreational

vehicles from the width regulations. For example, a company that transports recreational vehicles via tow-bars or on a flat-bed on behalf of a dealer would not be exempt because the recreational vehicle, in this instance, becomes freight when not being operated by its own power. This would also apply equally to travel trailers, which do not travel under their own power. We do not believe that a grace period is necessary to comply with this rulemaking action because the change simply involves excluding certain vehicles from coverage by the width regulations, and relieves the State agencies of the burden of enforcing these regulations against these vehicles.

Non-Divisible Load or Vehicle

The NPRM proposed to expand the definition of non-divisible load to include vehicles loaded with salt, sand, chemicals or a combination of these materials, to be used in spreading the materials on any winter roads, and when operating as emergency response vehicles. Four commenters expressed support for this proposal, citing the need for additional flexibility during poor weather conditions. The American Trucking Associations (ATA) opposed modifying the definition of non-divisible loads to include "military vehicle transporting marked military equipment or materiel." Further, the ATA suggested that all emergency response vehicles should be eligible for classification as non-divisible loads. The American Association of State Highway Transportation Officials (AASHTO) also recommended that the FHWA work with AASHTO to develop a proposed exception to the current non-divisible load requirement that would allow, but not require, a State to issue a permit to an overweight vehicle certified to be carrying an urgently needed disaster relief load during a declared emergency. The MDOT, while supporting the proposal, asked whether a permit would be required as a result of this determination.

*FHWA Response:* The FHWA believes that the limiting factors for the specific vehicles mentioned in the NPRM are adequate to ensure that they are used only during an emergency. Since the proposal would allow these vehicles to be considered non-divisible loads, no permit would be necessary.

The suggestions to create a more expansive definition to accommodate additional non-divisible loads during declared emergencies are beyond the scope of this rulemaking and therefore will not be addressed at this time. The ATA's opposition to the inclusion of "military vehicles transporting marked

military equipment or materiel" in the definition of non-divisible loads is also outside the scope of this rulemaking. Such military vehicles were the subject of a previous rulemaking action, which is now finalized.

Drive-Away Saddlemount Combination

The FHWA proposed to amend 23 CFR 658.13(e)(1)(iii) to extend to 97 feet the length limit on drive-away saddlemount combinations that are specifically designed to tow up to three trucks or truck tractors, each connected by a saddle to the frame or fifth wheel of the forward vehicle of the truck or truck tractor in front of it. This provision generated 22 comments. The comments focused on the wording of section 4141 of SAFETEA–LU, specifically whether or not the language was intended to include all saddlemount combinations in the new 97-foot limit, or only those that include a fullmount. The question arose because of the title of newly created 49 U.S.C. 31111(a)(4), "Drive-away saddlemount with fullmount vehicle transporter combination." Section 4141 of SAFETEA–LU defined this term as "a vehicle combination designed and specifically used to tow up to 3 trucks or truck tractors, each connected by a saddle to the frame or fifth wheel of the forward vehicle of the truck or truck tractor in front of it." The definition does not refer to a fullmount in the vehicle combination.

Several commenters expressed the view that the statutory language should be interpreted to include only saddlemounts with fullmount. Congressman David G. Reichert, AASHTO, and the law firm of Schwerin Campbell Barnard LLP believe that the congressional language shows clear intent to limit the application of the law to saddlemount combinations "with fullmount." In support of this position, several commenters expressed concerns about the safety of this configuration. Congressman Reichert noted that the "fullmount saddlemount vehicle, had no wheels on the ground, which tends to make the entire vehicle combination more stable." This view was also shared by Schwerin Campbell Barnard LLP, on behalf of General Teamsters Local 174, a Seattle-based affiliate of the International Brotherhood of Teamsters. Additionally, AASHTO stated, "the legislated change in the rule governing saddlemount vehicles has raised serious concerns among some State enforcement officials concerning possible safety and infrastructure issues." The California Department of Transportation asked about the scope of the legislation, specifically whether the new length

regulations would apply on service access routes. Additionally, FHWA received 20 general comments from individual Local 174 Teamster members, all expressing various safety concerns with regard to FHWA's interpretation and the proposed regulatory language.

Other commenters took the view that the language included, or was intended to include, all saddlemount combinations, with or without fullmount. In a July 18, 2006, letter to Maria Cino, Acting Secretary of the Department of Transportation, Congressman Don Young, Chairman of the House Transportation and Infrastructure Committee, stated that the NPRM language "accurately reflects the Congressional intent of section 4141." Congressman Young indicated that as Chairman of this committee, he was directly involved in the development of this language during the three years leading up to passage of SAFETEA–LU. He further states that: "It was our intention that the term 'drive-away saddlemount vehicle transporter combination' would include all saddlemount combinations, with or without fullmount." Three other members of Congress also submitted letters stating their involvement in the development of the language, and their support for the language as proposed in the NPRM.

The Automobile Carriers Conference (ACC) supported the proposed regulatory language and noted that the safety concerns expressed by other commenters were unfounded. The ACC refers to a study prepared by the University of Michigan Transportation Research Institute (UMTRI) ["Consideration of an Increase in the Overall Length of Triple Saddlemount Driveaway Combinations" (January 2006)]:

Extensive studies have been performed that prove the safety of these combinations. Combinations up to 97 feet have a proven track record for complying with brake stopping distances as prescribed in FMCSR 393.52. According to the University of Michigan Transportation Research Institute, rollover threshold is virtually unaffected when increasing the length of a saddlemount combination from 75 feet. UMTRI goes on to state that the extended length saddlemount combination shows better rearward amplification than a corresponding 75 foot combination. UMTRI concludes that one could expect that the extended length saddlemount combination would exhibit improved handling, on the order of 23% reduction in rearward amplification, relative to a corresponding 75 foot combination.

Further, ACC states that "[s]ince the enactment of SAFETEA–LU, actual operational experience in the running

[of] saddlemount combinations at [a] length up to 97 feet in the United States and parts of Canada have had no adverse impact on safety." On behalf of JHT Holding, Holland and Knight agreed, noting "that after 107 million miles of saddlemount operations since the enactment of SAFETEA–LU, driveaway saddlemount combinations continue to experience a crash rate that is significantly less than the national average for large truck crashes in the United States."

*FHWA Response:* The FHWA believes that the use of the words "with fullmount" in the section heading and in the term defined in the section is not dispositive of the matter. The FHWA believes that it is important to examine the entire language of the provision, and in particular the statutory definition of the term itself, which are both necessary to make a reasonable interpretation of the congressional intent behind this provision. The FHWA believes that restricting this provision to saddlemounts with fullmount would ignore the express statutory definition used by the legislators, which is indicative of an intent to make the provisions of this section applicable to all saddlemount combinations. The definition contains no reference as to whether the saddlemount combination must contain a fullmount vehicle, which in effect makes the definition, and therefore the provision, applicable to saddlemounts that contain a fullmount as well as those that do not. The fact that the defined term contains the words "with fullmount" is not sufficient to override the definition itself, which makes no such limitations. This conclusion is supported by the letter from Congressman Young, Chairman of the House Transportation and Infrastructure Committee, who indicates that he was involved in the development of the language in question, as well as letters from Congressmen Paul Ryan, Michael Burgess, and Kenny Marchant.

In view of the above, the FHWA maintains that its reading of the statute is reasonable, and is retaining in this final rule the language proposed in the NPRM, which prohibits the States from enforcing an overall length limit of more or less than 97 feet on driveaway saddlemount vehicle combinations with up to 3 towed units, with or without fullmount.

Definition of Over-the-Road Buses

The FHWA proposed to incorporate into 23 CFR 658.5 a previously established definition of "over-the-road" buses found in 42 U.S.C. 12181(5).

The American Bus Association and Greyhound Lines, Inc. stated that the NPRM's definition of "over-the-road buses" was accurate and needed nothing further. However, these entities suggested that the FHWA should clarify that the definition of a "covered State" includes any State that enforced an axle weight limit described in the NPRM at any time described in the legislation. Both commenters suggested using the term "in" as opposed to "during" in the proposed language in section 658.17(k) in order to clarify the statute and regulation.

*FHWA Response:* We agree. Section 115 of the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006 (119 Stat. 2408) used the term "in," as opposed to "during," and is therefore correct. We also agree with the assertion that the proposed definition of "covered States" does include all States that enforced such a limit at any time during the specified period.

*Section 658.13    Length*

As discussed above, the FHWA is amending the specialized equipment provision in section 658.13(e)(1)(iii) to incorporate the statutory length limit that is now applicable to drive-away saddlemount vehicle transporter combinations. Additionally, the FHWA is amending the definition to clarify that such combinations must comply with all applicable Federal Motor Carrier Safety Regulations, not just the provisions contained in 49 CFR Part 393.71.

*Section 658.15    Width*

The NPRM proposed to amend 23 CFR 658.5 to eliminate any Federal role in regulating the width of recreational vehicles while operating under their own power as commercial motor vehicles. As discussed above, the FHWA is clarifying that recreational vehicle movements that include transportation under their own power to or from the manufacturer for customer delivery, sale, or display purposes are not covered by the definition of commercial motor vehicle. As such, we proposed to change paragraph (c), to exempt recreational vehicles operating under their own power from width limitations. The FHWA received no comments to this proposal, and will retain the language proposed in the NPRM.

*Section 658.17  Weight*

Over-the-Road Buses

The NPRM proposed to extend the temporary exemption granted by Congress for over-the-road buses until October 1, 2009, and to change the regulations to reflect the new, 24,000 lb. axle weight mandated by Congress (Sec. 115, Pub. L. 109–115, 119 Stat. at 2408). Several States provided comments and questions regarding the applicability of the proposed regulations. The Texas Department of Public Safety and the California DOT asked several questions regarding the proposed language, the relationship of the exemption listed in section 1309 of SAFEATEA–LU, and the language contained in the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006. Specifically, the commenters asked whether either provision was mandatory for States, and whether the 24,000 lb. provision applied to the steering axle of a motorcoach.

Auxiliary Power Units

Comments relating to the idle reduction systems or auxiliary power units (APU) focused on three general areas: whether the APU itself was limited to 400 lbs., how the regulation should be enforced, and whether the States must allow the 400 lb. tolerance contained in the statute.

Several commenters pointed out that the language proposed by FHWA would limit the weight of the auxiliary power unit to 400 lbs., which they believed to be inconsistent with the legislative language. They believe instead that the 400 lbs. limit related to the additional weight of the vehicle, not the APU itself.

Several State and industry groups expressed concern or asked how a State would enforce the 400 lb. limit with regard to axle, tandem, gross weight, and the bridge formula. How would a State determine load distribution? What documentation or proof would or should be necessary for compliance? What constitutes proof that a unit is "fully functional at all times?" Additional concerns were raised with regard to the possibility of fraudulent certifications and APU look-alike devices that might allow additional freight in violation of the rule.

The ATA stated that the NPRM was inconsistent with congressional intent by allowing States the option of allowing either a gross weight limit, an axle weight limit exemption, or both. The ATA felt that "the regulation should make it clear that all States must allow the additional weight on gross,

vehicle, axle and bridge formula limits. The regulation should also clarify that the additional authorized weight may be inclusive of or in addition to existing state weight enforcement tolerances."

The ATA, while agreeing with the weight certification requirement, also expressed concern that the proposed rule included fuel weight in the calculation of the APU's weight. The Owner-Operators Independent Drivers Association (OOIDA) urged the FHWA to be flexible in this area, suggesting that an acceptable certification would include a certificate from the manufacturer, other business records, certification by the weight of individual APU components (to allow for units that are self-manufactured), or a certified scale ticket representing vehicle weight before and after the unit is installed.

Commenters also expressed concern regarding the requirement that the APU be "fully functional at all times," stating that they were unsure how such a requirement can be certified or documented, and requested that FHWA clarify this issue. The OOIDA suggested that the operator be able to satisfy this requirement verbally. The OOIDA and the Truck Manufacturers Association also believe that the certification requirement verifying the APU's weight will eliminate most, if not all, enforcement concerns since the driver would gain no freight advantage while transporting a non-functioning unit. This would especially be true if the unit is temporarily broken. Further, OOIDA requested that the rule make it clear that a driver would be required to make the necessary certifications only in response to the finding that the vehicle is overweight. Several respondents also requested that FHWA provide a list of manufacturers of these products, and provide guidance to the States regarding enforcement.

Finally, several commenters asked whether the States are required to adopt the 400 lb. exemption.

*FHWA Response:* Over-the-Road Buses—Section 1309 of SAFEATEA–LU is not preemptive. Its purpose is to allow the States to waive the axle weight limits on both transit and over-the-road buses at their discretion until October 1, 2009. The language in Sec. 115 of the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act of 2006 (119 Stat. 2396, at 2408) is preemptive in nature, but applies only to those States defined as "covered States." If a State meets the definition of a covered State, it must adhere to the new provision on all individual axle weights, including the steering axle. It is

important to note, however, that this legislation and the supporting regulation do not impair a State's ability to weigh over-the-road buses. Further, the regulatory language only prohibits the citing of single axle weight violations, not violations of the gross, tandem, or other weight limits while on the Interstate system.

Auxiliary Power Units

Section 756 of the Energy Policy Act of 2005 amended 23 U.S.C. 127(a) to allow an increase in the Federal weight limits by up to 400 lbs. to account for APUs installed in any heavy-duty vehicle (119 Stat. 594, at 829). The intent of this provision is to promote the use of technologies that reduce fuel consumption and emissions that result from engine idling.

We agree with several of the commenters and have adjusted the regulatory language accordingly. FHWA has revised the language to eliminate the weight requirement for the APU itself, while allowing up to a total of 400 lbs. in axle, tandem, gross, or bridge weight formula (which is an axle weight calculation), or the weight of the APU unit, whichever is less. For example, a vehicle equipped with an APU that has a certified weight of 750 lbs. would be allowed the maximum of 400 lbs. additional weight. However, a vehicle with an APU that has a certified weight of 300 pounds would be allowed a 300 lb. exemption. This is consistent with the statutory language.

The FHWA understands the concerns of enforcement agencies and users about the weight certification requirements. The FHWA believes that the certification of the APU's weight must be in writing, but can include a wide range of options, including a manufacturer's certification (sticker, specification plate, etc), certified scale tickets listing the vehicle's weight both before and after the unit's installation, a component parts list with listed weights of each component if the unit is manufactured by the owner or operator, etc., so long as it accurately reflects the weight of the unit and is available to roadside enforcement officers. As for the inclusion of fuel in the overall weight calculation of the unit, we have concluded upon further consideration that the empty weight of the APU is more appropriate, given that many of these units will utilize the truck tractor's fuel supply.

The statutory requirement for a "demonstration or certification" that the unit is "fully functional at all times" is more problematic. We believe that a manual demonstration, or a certification letter which clearly states the unit's

operational characteristics if the unit is temporarily broken down, should provide sufficient proof. FHWA agrees with several commenters that there will be little or no incentive for a driver to install and transport a non-working APU. We also believe that there would be little need to require a driver to provide proof of weight and operability unless the vehicle is over the weight thresholds specified in the regulations. Additionally, we agree that the increased weight must be allowed in addition to any enforcement tolerances that are currently authorized under Federal law.

It is important to note that section 756 of the Energy Policy Act of 2005 which amended 23 U.S.C. 127 does not preempt State enforcement of its weight limits on all highways; rather, it prevents the FHWA from imposing funding sanctions if a State authorizes the 400 lb. weight limit on their Interstate system. Therefore, it remains for each State to decide whether it will allow the increased weight limits for APUs. However, a State must adhere to the provisions of section 658.17 if it chooses to allow the additional weight.

### Section 658.23 LCV Freeze; Cargo-carrying Unit Freeze

The NPRM proposed to replace obsolete references to the Office of Motor Carriers with references to the FHWA. In drafting the replacement regulatory text in the NPRM, the FHWA inadvertently changed the word "must" to "may" in the last sentence of subsection (c). We did not propose, nor did we intend, to change the substantive requirements contained in this subsection. The FHWA did not receive any comments in response to the proposals contained in this section. Therefore we have corrected the regulatory text to reflect the current regulatory requirements and to update the obsolete references to the Office of Motor Carriers.

### Appendix A to 23 CFR Part 658—National Network—Federally-Designated Routes

The FHWA proposed to change route designations within the State of New Mexico on certain portions of the National Network. The State of New Mexico submitted a comment clarifying the changes to route number designations for routes on its portion of the National Network. These changes are numerical only and will not add or remove routes from the original network. Additional changes include: changing NM 491 to U.S. 491; changing U.S. 516 to NM 516, and; deleting U.S. 666 in its entirety. The FHWA is

therefore amending Appendix A to reflect these route number changes.

### Appendix B to 23 CFR Part 658—Grandfathered Semitrailer Lengths

One commenter pointed out that Appendix B refers to 23 CFR 658.13(h), which no longer exists, and suggests making the appropriate modifications to correct the error.

*FHWA Response:* As stated in the NPRM, the FHWA is aware that section 658.13 was reorganized in a previous rulemaking action, at 67 FR 15110, March 29, 2002, and that the provisions that formerly appeared in paragraph (h) are now found in paragraph (g). Therefore, the FHWA is adopting the language proposed in the NPRM to correct this error.

### Miscellaneous Comments

*General Comments on FHWA's Size and Weight Program*

Several individuals submitted general comments on the FHWA's size and weight program. Among the comments were suggestions to eliminate double and triple vehicle combinations on the highways, restricting the length of landscape trucks and trailers, mandating pavement standards to provide for 10 ton-per-axle weight limits in all weather conditions, allowing 90,000 lbs. gross weight on six axle tractor-semitrailers, and generally revising section 658.15 and section 658.17 to accommodate larger, heavier, hybrid vehicles that are currently not allowed on the Interstates or National Network.

*FHWA Response:* These comments address issues that were not raised in the NPRM, and are therefore outside the scope of this rulemaking. Additionally, the vehicle weight limits for Interstate highways are statutory (23 U.S.C. 127), as are the vehicle width and length limits on the National Network (49 U.S.C. 31111-31115). None of them can be changed by FHWA.

### FHWA Authority

One commenter questions the FHWA's legal authority to amend the regulations as proposed in the NPRM. The commenter indicates several of the proposals, including those that propose to replace references in the regulations to the old Office of Motor Carriers with references to the FHWA, are illegal because section 101(a) of the Motor Carrier Safety Improvement Act of 1999 (Pub. L. 106–159, 113 Stat. 1748) (MCSIA) requires the Federal Motor Carrier Safety Administrator to carry out any duties and powers related to motor carriers or motor carrier safety. He indicates that after the creation of

FMCSA, various driver and vehicle safety inspection functions were transferred from FHWA's Office of Motor Carriers to FMCSA in a final rule published on October 19, 1999 (64 FR 56270), but that the final rule failed to transfer, and maintained within the FHWA in violation of the statute, the enforcement of commercial motor vehicle size and weight laws and regulations affecting the safe design of trucks.

The FHWA disagrees with the commenter's interpretation of the provisions of the MCSIA and its alleged effect on FHWA's authority over the commercial vehicle size and weight program. The provision in question is now codified at 49 U.S.C. 113(f)(1). This provision, which describes the powers and duties of the Federal Motor Carrier Administrator, reads as follows:

"(f) Powers and Duties.—The Administrator shall carry out—(1) duties and powers *related to motor carriers or motor carrier safety* vested in the Secretary by chapters 5, 51, 55, 57, 59, 133 through 149, *311*, 313, 315, and 317 and by section 18 of the Noise Control Act of 1972 (42 U.S.C. 4917; 86 Stat. 1249–1250); except as otherwise delegated by the Secretary to any agency of the Department of Transportation other than the Federal Highway Administration, as of October 8, 1999 * * *" (emphasis added)

For purposes of this discussion, it is clear that the FMCSA's Administrator is delegated by statute the duties and powers related to motor carriers and motor carrier safety vested in the Secretary by, among other provisions, chapter 311 of title 49, United States Code. However, we note that this statutory delegation is limited to duties and powers "related to motor carriers and motor carrier safety" in that chapter. This clearly refers to the motor carrier and motor carrier safety functions that were delegated to the FMCSA in the 1999 final rule cited by the commenter (64 FR 56270), which are very different from the commercial motor vehicle size and weight limitations, duties, and functions, which are in part located in 49 U.S.C. Chapter 311, and which remained delegated to the FHWA. Duties and powers under other subchapters of chapter 311 which are related to motor carrier and motor carrier safety functions such as the Motor Carrier Safety Assistance Program and State grants, and the Federal Motor Carrier Safety Regulations that affect motor carriers and drivers, were delegated to the FMCSA by the 1999 final rule. Duties and powers relating to the commercial motor vehicle size and weight limitations, which are

established by law, not only in Chapter 311 of title 49 United States Code, but also in Chapter 1 of title 23 U.S.C. (sections 127 and 141), remained delegated to the FHWA Administrator (see 71 FR 30828).

The commercial motor vehicle size and weight program is different from the motor carrier and motor carrier safety duties carried out by the FMCSA, and serve to establish limitations which the States are required to implement and enforce in order to protect and preserve the infrastructure and overall highway safety in highways that have received Federal assistance for construction and maintenance. It is not a regulation of motor carriers or their drivers, although these limitations affect the dimensions of the vehicles operated by these entities. The commercial motor vehicle size and weight program, including its regulation of the State's authority over vehicle limitations, is directly related to the Federal-aid highway program and Federal-aid highway funding. It does not involve the type of motor carrier or motor carrier safety oversight that Congress intended to be delegated to the FMCSA in the MCSIA provisions. As a result, it has appropriately remained delegated to the FHWA, as part of this agency's duties to administer the Federal-aid highway program and highway safety.

Finally, we note that Congress is fully aware that the commercial vehicle size and weight program remained in FHWA. As part of recent major highway program reauthorization acts and related oversight, congressional committees have requested and received information on FHWA's implementation of changes to the size and weight program. The Department would surely have received direction from Congress during all the years since the enactment of the MCSIA if Congress had intended this program to be delegated to an agency other than the FHWA.

## Rulemaking Analyses and Notices

### Executive Order 12866 (Regulatory Planning and Review) and DOT Regulatory Policies and Procedures

The FHWA has determined that this action is not a significant regulatory action within the meaning of Executive Order 12866 and would not be significant within the meaning of the U.S. Department of Transportation's regulatory policies and procedures. This rule will not adversely affect, in a material way, any sector of the economy. This action changes out-dated references to offices within the FHWA and updates the current regulations to reflect changes made by the Congress in

SAFETEA–LU and other recent legislation. Additionally, this action would add various definitions; correct obsolete references, definitions, and footnotes; eliminate redundant provisions; amend numerical route changes to the National Highway designations; and incorporate a statutorily mandated weight limit provision. There will not be any additional costs incurred by any affected group as a result of this rule. In addition, these changes will not interfere with any action taken or planned by another agency and will not materially alter the budgetary impact of any entitlements, grants, user fees or loan programs. Consequently, a regulatory evaluation is not required.

### Regulatory Flexibility Act

In compliance with the Regulatory Flexibility Act (Pub. L. 96–354, 5 U.S.C. 601–612), we have evaluated the effects of this action on small entities and have determined that the action would not have a significant economic impact on a substantial number of small entities. The FHWA certifies that this action will not have a significant economic impact on a substantial number of small entities.

### Executive Order 13132 (Federalism)

This action has been analyzed in accordance with the principles and criteria contained in Executive Order 13132, and the FHWA has preliminarily determined that this proposed action would not warrant the preparation of a federalism assessment. Any federalism implications arising from this rule are attributable to SAFETEA–LU sections 4112 and 4141. The FHWA has determined that this proposed action would not affect the States' ability to discharge traditional State government functions.

### Executive Order 12372 (Intergovernmental Review)

Catalog of Federal Domestic Assistance Program Number 20.205, Highway Planning and Construction. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities apply to this program.

### Paperwork Reduction Act of 1995

Under the Paperwork Reduction Act of 1995 (PRA) (44 U.S.C. 3501), Federal agencies must obtain approval from the Office of Management and Budget (OMB) for each collection of information they conduct, sponsor, or require through regulations. The FHWA has determined that this rule does not

contain collection of information requirements for the purposes of the PRA.

### Unfunded Mandates Reform Act of 1995

This rule would not impose unfunded mandates as defined by the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4, 109 Stat. 48). This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $128.1 million or more in any one year. (2 U.S.C. 1532). Further, in compliance with the Unfunded Mandates Reform Act of 1995, the FHWA will evaluate any regulatory action that might be proposed in subsequent stages of the proceeding to assess the effects on State, local, and tribal governments and the private sector.

### Executive Order 12988 (Civil Justice Reform)

This action meets applicable standards in sections 3(a) and 3(b)(2) of Executive Order 12988, Civil Justice Reform, to minimize litigation, eliminate ambiguity, and reduce burden.

### Executive Order 13045 (Protection of Children)

The FHWA has analyzed this proposed action under Executive Order 13045, Protection of Children from Environmental Health Risks and Safety Risks. The FHWA certifies that this action would not cause any environmental risk to health or safety that may disproportionately affect children.

### Executive Order 12630 (Taking of Private Property)

The FHWA has analyzed this rule under Executive Order 12630, Governmental Actions and Interference with Constitutionally Protected Property Rights. The FHWA does not anticipate that this action would affect a taking of private property or otherwise have taking implications under Executive Order 12630.

### National Environmental Policy Act

The FHWA has analyzed this action for the purposes of the National Environmental Policy Act of 1969, as amended (42 U.S.C. 4321–4347) and has determined that this action will not have any effect on the quality of the environment.

### Executive Order 13175 (Tribal Consultation)

The FHWA has analyzed this action under Executive Order 13175, dated November 6, 2000, and believes that the

action would not have substantial direct effects on one or more Indian tribes; would not impose substantial compliance costs on Indian tribal governments; and will not preempt tribal law. Therefore, a tribal summary impact statement is not required.

*Executive Order 13211 (Energy Effects)*

We have analyzed this rule under Executive Order 13211, Actions Concerning Regulations that Significantly Affect Energy Supply, Distribution, or Use. We have determined that it is not a significant energy action under that order because it is not a significant regulatory action under Executive Order 12866 and is not likely to have a significant adverse effect on the supply, distribution or use of energy. Therefore, a Statement of Energy Effects is not required.

*Regulation Identification Number*

A regulation identification number (RIN) is assigned to each regulatory section listed in the Unified Agenda of Federal Regulations. The Regulatory Information Service Center publishes the Unified Agenda in April and October of each year. The RIN contained in the heading of this document can be used to cross-reference this section with the Unified Agenda.

**List of Subjects in 23 CFR Parts 657 and 658**

Grants Program—transportation, Highways and roads, Motor carriers.

Issued on: February 13, 2007.

**J. Richard Capka,**
*Federal Highway Administrator.*

■ In consideration of the foregoing, the FHWA amends Chapter I of title 23, Code of Federal Regulations, by revising Parts 657 and 658, respectively, as set forth below:

**PART 657—CERTIFICATION OF SIZE AND WEIGHT ENFORCEMENT**

■ 1. Revise the authority citation for part 657 to read as follows:

**Authority:** 23 U.S.C. 127, 141 and 315; 49 U.S.C. 31111, 31113 and 31114; sec. 1023, Pub. L. 102–240, 105 Stat. 1914; and 49 CFR 1.48(b)(19), (b)(23), (c)(1) and (c)(19).

■ 2. Revise § 657.1 to read as follows:

**§ 657.1  Purpose.**

To prescribe requirements for administering a program of vehicle size and weight enforcement on the Interstate System, and those routes which, prior to October 1, 1991, were designated as part of the Federal-aid primary, Federal-aid secondary, or Federal-aid urban systems, including

the required annual certification by the State.

■ 3. Revise § 657.3 to read as follows:

**§ 657.3  Definitions.**

Unless otherwise specified in this part, the definitions in 23 U.S.C. 101(a) are applicable to this part. As used in this part:

*Enforcing* or *Enforcement* means all actions by the State to obtain compliance with size and weight requirements by all vehicles operating on the Interstate System and those roads which, prior to October 1, 1991, were designated as part of the Federal-aid Primary, Federal-aid Secondary, or Federal-aid Urban Systems.

*Urbanized area* means an area with a population of 50,000 or more.

■ 4. Revise the first sentence of paragraph (a) and revise paragraph (b) of § 657.11 to read as follows:

**§ 657.11  Evaluation of operations.**

(a) The State shall submit its enforcement plan or annual update to the FHWA Division Office by July 1 of each year. * * *

(b) The FHWA shall review the State's operation under the accepted plan on a continuing basis and shall prepare an evaluation report annually. The State will be advised of the results of the evaluation and of any needed changes in the plan itself or in its implementation. Copies of the evaluation reports and subsequent modifications resulting from the evaluation shall be forwarded to the FHWA's Office of Operations.

■ 5. Revise paragraphs (b), (e), and (f)(3)(iii) of § 657.15 to read as follows:

**§ 657.15  Certification content.**

*    *    *    *    *

(b) A statement by the Governor of the State, or an official designated by the Governor, that all State size and weight limits are being enforced on the Interstate System and those routes which, prior to October 1, 1991, were designated as part of the Federal-aid Primary, Urban, and Secondary Systems, and that the State is enforcing and complying with the provisions of 23 U.S.C. 127(d) and 49 U.S.C. 31112. Urbanized areas not subject to State jurisdiction shall be identified. The statement shall include an analysis of enforcement efforts in such areas.

*    *    *    *    *

(e) A copy of any State law or regulation pertaining to vehicle sizes and weights adopted since the State's last certification and an analysis of the changes made.

*    *    *    *    *

(f) * * *
(3) * * *
(iii) *Permits.* The number of permits issued for overweight loads shall be reported. The reported numbers shall specify permits for divisible and nondivisible loads and whether issued on a trip or annual basis.

■ 6. Revise § 657.17 to read as follows:

**§ 657.17  Certification submittal.**

(a) The Governor, or an official designated by the Governor, shall submit the certification to the FHWA division office prior to January 1 of each year.

(b) The FHWA division office shall forward the original certification to the FHWA's Office of Operations and one copy to the Office of Chief Counsel. Copies of appropriate evaluations and/or comments shall accompany any transmittal.

■ 7. Revise § 657.19 to read as follows:

**§ 657.19  Effect of failure to certify or to enforce State laws adequately.**

If a State fails to certify as required by this regulation or if the Secretary determines that a State is not adequately enforcing all State laws respecting maximum vehicle sizes and weights on the Interstate System and those routes which, prior to October 1, 1991, were designated as part of the Federal-aid primary, Federal-aid secondary or Federal-aid urban systems, notwithstanding the State's certification, the Federal-aid funds for the National Highway System apportioned to the State for the next fiscal year shall be reduced by an amount equal to 10 percent of the amount which would otherwise be apportioned to the State under 23 U.S.C. 104, and/or by the amount required pursuant to 23 U.S.C. 127.

**PART 658—TRUCK SIZE AND WEIGHT, ROUTE DESIGNATIONS—LENGTH, WIDTH AND WEIGHT LIMITATIONS**

■ 8. The authority citation for part 658 is revised to read as follows:

**Authority:** 23 U.S.C. 127 and 315; 49 U.S.C. 31111, 31112, and 31114; sec. 347, Pub. L. 108–7, 117 Stat. 419; sec. 756, Pub. L. 109–58, 119 Stat. 829; sec. 1309, Pub. L. 109–59, 119 Stat. 1219; sec. 115, Pub. L. 109–115, 119 Stat. 2408; 49 CFR 1.48(b)(19) and (c)(19).

■ 9. Amend § 658.5 by revising the definitions of "commercial motor vehicle" and paragraph (2) of the definition of "nondivisible load or vehicle"; and adding definitions of "drive-away saddlemount vehicle transporter combinations" and "over-the-road bus" to read as follows:

## § 658.5  Definitions.

\*    \*    \*    \*    \*

*Commercial motor vehicle.* For purposes of this regulation, a motor vehicle designed or regularly used to carry freight, merchandise, or more than ten passengers, whether loaded or empty, including buses, but not including vehicles used for vanpools, or recreational vehicles operating under their own power.

*Drive-away saddlemount vehicle transporter combination.* The term drive-away saddlemount vehicle transporter combination means a vehicle combination designed and specifically used to tow up to 3 trucks or truck tractors, each connected by a saddle to the frame or fifth wheel of the forward vehicle of the truck tractor in front of it. Such combinations may include up to one fullmount.

\*    \*    \*    \*    \*

*Nondivisible load or vehicle.*
(1) \* \* \*
(2) A State may treat as nondivisible loads or vehicles: emergency response vehicles, including those loaded with salt, sand, chemicals or a combination thereof, with or without a plow or blade attached in front, and being used for the purpose of spreading the material on highways that are or may become slick or icy; casks designed for the transport of spent nuclear materials; and military vehicles transporting marked military equipment or materiel.

*Over-the-road bus.* The term over-the-road bus means a bus characterized by an elevated passenger deck located over a baggage compartment, and typically operating on the Interstate System or roads previously designated as making up the Federal-aid Primary System.

\*    \*    \*    \*    \*

■ 10. Amend § 658.13 by revising paragraph (e)(1)(iii) and adding paragraph (h) to read as follows:

## § 658.13  Length.

\*    \*    \*    \*    \*

(e) \* \* \*
(1) \* \* \*
(iii) Drive-away saddlemount vehicle transporter combinations are considered to be specialized equipment. No State shall impose an overall length limit of less or more than 97 feet on such combinations. This provision applies to drive-away saddlemount combinations with up to three saddlemounted vehicles. Such combinations may include one fullmount. Saddlemount combinations must also comply with the applicable motor carrier safety regulations at 49 CFR parts 390–399.

\*    \*    \*    \*    \*

(h) Truck-tractors, pulling 2 trailers and semitrailers, used to transport custom harvester equipment during harvest months within the State of Nebraska may not exceed 81 feet 6 inches.

■ 11. Revise paragraph (c) of § 658.15 to read as follows:

## § 658.15  Width.

\*    \*    \*    \*    \*

(c) Notwithstanding the provisions of this section or any other provision of law, a State may grant special use permits to motor vehicles, including manufactured housing, that exceed 102 inches in width.

■ 12. Revise paragraph (k) and add paragraph (n) of section § 658.17 to read as follows:

## § 658.17  Weight.

\*    \*    \*    \*    \*

(k) Any over-the-road bus, or any vehicle which is regularly and exclusively used as an intrastate public agency transit passenger bus, is excluded from the axle weight limits in paragraphs (c) through (e) of this section until October 1, 2009. Any State that has enforced, in the period beginning October 6, 1992, and ending November 30, 2005, a single axle weight limitation of 20,000 pounds or greater but less than 24,000 pounds may not enforce a single axle weight limit on these vehicles of less than 24,000 lbs.

\*    \*    \*    \*    \*

(n) Any vehicle subject to this subpart that utilizes an auxiliary power or idle reduction technology unit in order to promote reduction of fuel use and emissions because of engine idling, may be allowed up to an additional 400 lbs. total in gross, axle, tandem, or bridge formula weight limits.

(1) To be eligible for this exception, the operator of the vehicle must be able to prove:

(i) By written certification, the weight of the APU; and

(ii) By demonstration or certification, that the idle reduction technology is fully functional at all times.

(2) Certification of the weight of the APU must be available to law enforcement officers if the vehicle is found in violation of applicable weight laws. The additional weight allowed cannot exceed 400 lbs. or the weight certified, whichever is less.

■ 13. Revise paragraphs (c) and (e) of § 658.23 to read as follows:

## § 658.23  LCV freeze; cargo-carrying unit freeze.

\*    \*    \*    \*    \*

(c) For specific safety purposes and road construction, a State may make minor adjustments of a temporary and emergency nature to route designation and vehicle operating restrictions applicable to combinations subject to 23 U.S.C. 127(d) and 49 U.S.C. 31112 and in effect on June 1, 1991 (July 6, 1991, for Alaska). Minor adjustments which last 30 days or less may be made without notifying the FHWA. Minor adjustments which exceed 30 days require approval of the FHWA. When such adjustments are needed, a State must submit to the FHWA, by the end of the 30th day, a written description of the emergency, the date on which it began, and the date on which it is expected to conclude. If the adjustment involves alternate route designations, the State shall describe the new route on which vehicles otherwise subject to the freeze imposed by 23 U.S.C. 127(d) and 49 U.S.C. 31112 are allowed to operate. To the extent possible, the geometric and pavement design characteristics of the alternate route should be equivalent to those of the highway section which is temporarily unavailable. If the adjustment involves vehicle operating restrictions, the State shall list the restrictions that have been removed or modified. If the adjustment is approved, the FHWA will publish the notice of adjustment, with an expiration date, in the **Federal Register**. Requests for extension of time beyond the originally established conclusion date shall be subject to the same approval and publications process as the original request. If upon consultation with the FHWA a decision is reached that minor adjustments made by a State are not legitimately attributable to road or bridge construction or safety, the FHWA will inform the State, and the original conditions of the freeze must be reimposed immediately. Failure to do so may subject the State to a penalty pursuant to 23 U.S.C. 141.

\*    \*    \*    \*    \*

(e) States further restricting or prohibiting the operation of vehicles subject to 23 U.S.C. 127(d) and 49 U.S.C. 31112 after June 1, 1991, shall notify the FHWA within 30 days after the restriction is effective. The FHWA will publish the restriction in the **Federal Register** as an amendment to appendix C to this part. Failure to provide such notification may subject the State to a penalty pursuant to 23 U.S.C. 141.

\*    \*    \*    \*    \*

## Appendix A to Section 658—National Network—Federally Designated Routes

■ 14. Amend appendix A to part 658 as follows:

■ A. By removing the words "[The federally-designated routes on the National Network consist of the Interstate System, except as noted, and

the following additional Federal-aid Primary highways.]" and adding, in their place, the words "[The federally-designated routes on the National Network consist of the Interstate System, except as noted, and the following additional highways.]" in each place that they appear;

■ B. By removing the explanatory phrase "No additional routes have been

federally designated; STAA-dimensioned commercial vehicles may legally operate on all Federal-aid Primary highways under State law." for the States of Arkansas, Colorado, Indiana, Kansas, Louisiana, Mississippi, Montana, Nebraska, Nevada, Ohio, South Dakota, Texas, Utah, Washington and Wyoming, and add, in its place, the

words, "No additional routes have been federally designated; under State law STAA-dimensioned commercial vehicles may legally operate on all highways which, prior to June 1, 1991, were designated as Federal-aid primary highways.";

■ C. By revising the entries for "New Mexico" to read as follows:

### NEW MEXICO

| | | |
|---|---|---|
| US 56 | I–25 Springer | OK State Line. |
| US 60 | AZ State Line | I–25 Socorro. |
| US 62 | US 285 Carlsbad | Tx State Line. |
| US 64 | AZ State Line | NM 516 Farmington. |
| US 70 | AZ State Line | I–10 Lordsburg. |
| US 70 | I–10 Las Cruces | U.S. 54 Tularosa. |
| US 70 | US 285 Roswell | U.S. 84 Clovis. |
| NM 80 | AZ State Line | I–10 Road Forks. |
| US 84 | Tx State Line Clovis | CO State Line. |
| US 87 | US 56 Clayton | Tx State Line. |
| US 160 | Az State Line (Four Corners) | CO State Line. |
| US 285 | Tx State Line s. of Carlsbad | CO State Line. |
| US 491 | I–40 Gallup | CO State Line. |
| NM 516 | U.S. 64 Farmington | U.S. 550 Aztec. |
| US 550 | NM 516 Aztec | CO State Line. |

## Appendix B To Part 658—Grandfathered Semitrailer Lengths

■ 15. Amend appendix B to Part 658 in footnotes 1, 2, and 3 by removing the reference "23 CFR 658.13(h)" and by adding in its place "23 CFR 658.13(g)" each place it appears.

[FR Doc. E7–2823 Filed 2–16–07; 8:45 am]

BILLING CODE 4910-22-P

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

### 50 CFR Part 679

[Docket No. 060216044–6044–01; I.D. 021407B]

### Fisheries of the Exclusive Economic Zone Off Alaska; Pacific Cod by Vessels Catching Pacific Cod for Processing by the Offshore Component in the Western Regulatory Area of the Gulf of Alaska

AGENCY: National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

ACTION: Temporary rule; closure.

SUMMARY: NMFS is prohibiting directed fishing for Pacific cod by vessels catching Pacific cod for processing by the offshore component in the Western Regulatory Area of the Gulf of Alaska (GOA). This action is necessary to

prevent exceeding the A season allocation of the 2007 total allowable catch (TAC) of Pacific cod apportioned to vessels catching Pacific cod for processing by the offshore component of the Western Regulatory Area of the GOA.

DATES: Effective 1200 hrs, Alaska local time (A.l.t.), February 14, 2007, until 1200 hrs, A.l.t., September 1, 2007.

FOR FURTHER INFORMATION CONTACT: Jennifer Hogan, 907–586–7228.

SUPPLEMENTARY INFORMATION: NMFS manages the groundfish fishery in the GOA exclusive economic zone according to the Fishery Management Plan for Groundfish of the Gulf of Alaska (FMP) prepared by the North Pacific Fishery Management Council under authority of the Magnuson-Stevens Fishery Conservation and Management Act. Regulations governing fishing by U.S. vessels in accordance with the FMP appear at subpart H of 50 CFR part 600 and 50 CFR part 679.

The A season allocation of the 2007 TAC of Pacific cod apportioned to vessels catching Pacific cod for processing by the offshore component of the Western Regulatory Area of the GOA is 868 metric tons (mt) as established by the 2006 and 2007 harvest specifications for groundfish of the GOA (71 FR 10870, March 3, 2006).

In accordance with § 679.20(d)(1)(i), the Administrator, Alaska Region, NMFS (Regional Administrator), has determined that the 2007 TAC of Pacific cod apportioned to vessels catching

Pacific cod for processing by the offshore component of the Western Regulatory Area of the GOA will soon be reached. Therefore, the Regional Administrator is establishing a directed fishing allowance of 668 mt, and is setting aside the remaining 200 mt as bycatch to support other anticipated groundfish fisheries. In accordance with § 679.20(d)(1)(iii), the Regional Administrator finds that this directed fishing allowance has been reached. Consequently, NMFS is prohibiting directed fishing for Pacific cod by vessels catching Pacific cod for processing by the offshore component in the Western Regulatory Area of the GOA.

After the effective date of this closure the maximum retainable amounts at § 679.20(e) and (f) apply at any time during a trip.

### Classification

This action responds to the best available information recently obtained from the fishery. The Assistant Administrator for Fisheries, NOAA (AA), finds good cause to waive the requirement to provide prior notice and opportunity for public comment pursuant to the authority set forth at 5 U.S.C. 553(b)(B) as such requirement is impracticable and contrary to the public interest. This requirement is impracticable and contrary to the public interest as it would prevent NMFS from responding to the most recent fisheries data in a timely fashion and would delay the closure of Pacific cod



United States Court of Appeals

District of Columbia Circuit
Washington, D.C. 20001-2866

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED

SEP 1 3 2007

CLERK

**Case Caption:** William B. Trescott

v.

**Case No:** 07-1327

Federal Highway Administration, et al.

## ENTRY OF APPEARANCE

### Party Information

The Clerk shall enter my appearance as counsel for the following parties:
(List each party represented individually. Use an additional blank sheet as necessary)

☐ Appellant(s)/Petitioner(s)    ☒ Appellee(s)/Respondent(s)    ☐ Intervenor(s)    ☐ Amicus Curiae

Federal Highway Administration

Department of Transportation

United States

_____

Names of Parties                                        Names of Parties

### Counsel Information

**Lead Counsel:** Kelsi Brown Corkran

**Direct Phone:** 202-514-3159    **Fax:** 202-514-9405    **Email:** Kelsi.Corkran@usdoj.gov

**2nd Counsel:** Mark B. Stern

**Direct Phone:** 202-514-5089    **Fax:** 202-514-9405    **Email:** Mark.Stern@usdoj.gov

**3rd Counsel:** _____

**Direct Phone:** _____    **Fax:** _____    **Email:** _____

**Firm Name:** Civil Division, Appellate Staff, U.S. Department of Justice

**Firm Address:** 950 Pennsylvania Ave NW, Room 7216, Washington, DC 20530

**Firm Phone:** _____    **Fax:** _____    **Email:** _____

Notes: This form must be submitted by a member of the Bar of the U.S. Court of Appeals for the D.C. Circuit.
**Names of non-member attorneys listed above will not be entered on the court's docket.**
Applications for admission are available on the court's web site at http://www.cadc.uscourts.gov/

[USCADC Form 3 (Rev. Mar 2004)]



IN THE UNITED STATES COURT OF APPEAL
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| WILLIAM B. TRESCOTT, | ) | |
| | ) | |
| Petitioner, | ) | No. 07-1327 |
| | ) | |
| v. | ) | |
| | ) | |
| THE FEDERAL HIGHWAY | ) | |
| ADMINISTRATION, THE SECRETARY | ) | |
| OF TRANSPORTATION, and | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## RESPONSE TO MOTION TO EXPEDITE

Petitioner William B. Trescott has asked the Court to expedite consideration

of his petition for review. The government has no objection to expedition provided

that it receives the time afforded by the governing rules for preparation of its brief.

It is clear, however, that petitioner has established no basis for priority consideration

of his claims, and that, under this Court's governing standards, the motion should be

denied.

Petitioner seeks review of a rule promulgated by the Federal Highway

Administration ("FHWA") which amends the regulations governing the enforcement

of commercial vehicle size and weight. <u>See</u> 23 C.F.R. §§ 657, 658 (2007). The

FHWA amended the regulations in order to incorporate a number of statutory requirements imposed by the Safe, Accountable, Flexible, Efficient Transportation Equity Act, the Energy Policy Act of 2005, and the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriation Act of 2006. See 72 Fed. Reg. 7741 (Feb. 20, 2007) (summarizing the regulation amendments).

It appears that petitioner intends to argue that the rule is arbitrary and capricious because it establishes size and weight limits for commercial motor vehicles which preclude the use of certain vehicles and products patented by the petitioner. See Pet'r's Mot. to Expedite 3-4. Petitioner previously filed a similar challenge in the United States District Court for the District of Columbia, which was dismissed for lack of subject matter jurisdiction. See Trescott v. Peters, No. 05-678 (D.D.C. Mar. 2, 2007).

Petitioner has not demonstrated that expedition is required to avoid "irreparable injury" or that the decision under review "is subject to substantial challenge." D.C. Circuit Handbook of Practice and Internal Procedures 33 (2007). The motion articulates no basis for concluding that the challenged rule is arbitrary and capricious. Nor does it demonstrate any irreparable injury that will occur as a result of the size and weight limits imposed by the challenged rule. Petitioner offers no substantiation

-2-

of any sort for his unfounded assertion that "twenty Americans will be killed each

business day this case is delayed," Pet'r's Mot. to Expedite 5 (emphasis omitted).

In sum, petitioner has failed to meet the standards for expedited consideration

of his claims.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

MARK B. STERN
KELSI BROWN CORKRAN
Attorneys, Appellate Staff
Civil Division, Room 7216
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
 (202) 514-3159

-3-

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2007, I caused an original and four copies of the foregoing opposition to be filed with the Court by hand delivery, and caused one copy to be served on the petitioner by overnight mail delivery at the following address:

William B. Trescott
8028 Farm to Market Road 457
Bay City, Texas 77414

Kelsi Brown Corkran

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

SEP 1 3 2007

RECEIVED

U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave., NW, Rm 7216
Washington, DC 20530

Tel: (202) 514-3159
Fax: (202) 514-9405

September 13, 2007

Mr. Mark Langer
Clerk of the United States Court of Appeals
 for the District of Columbia Circuit
333 Constitution Ave., NW
Washington, DC 20001

RE:    Trescott v. Federal Highway Administration, et al.
       No. 07-1327

Dear Mr. Langer:

    Please find enclosed for filing in the above-referenced matter an original and four copies of respondents' Opposition to Motion to Expedite, as well as an appearance form on behalf of myself, Kelsi Brown Corkran, and Mark B. Stern, representing respondents Federal Highway Administration, Department of Transportation, and the United States.

    Thank you for your attention to this matter.

                            Sincerely,

                            Kelsi Brown Corkran
                            Attorney, Appellate Staff
                            Civil Division

Enclosure

cc:    William B. Trescott, pro se petitioner



07-1337

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEPARTMENT OF TRANSPORTATION

**CERTIFICATE OF TRUE COPY**

OCT - 4 2007

**RECEIVED**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   OCT - 4 2007

**CLERK**

I HEREBY CERTIFY that the attached { is a true copy } of the original

**Index of Documents**
in Docket FHWA-2006-24134, Item Numbers 1 through 79 and is,
on file in the Information Services, Docket Operations and Media Management, U.S.
Department of Transportation.

Signed and dated at _____ Washington, D.C. _____

this _____ 2nd _____ day of _____ October, 2007 _____

by _Violet C. Collins_
      *(Signature)*
**Legal Instruments Examiner**
      *(Title)*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I HEREBY CERTIFY that  Violet C. Collins

w___ ___ ___e foregoing certificate is now, and was, at the time of signing,  Legal Instruments Examiner,

D___ ___ ___tions and Media Management, U.S. Department of Transportation

and ___ ___odian of the subject record, and that full faith and credit  should be given his/her  certificate as

suc___

IN WITNESS WHEREOF, I have hereunto subscribed

my name and cause the seal of the Department of

Transportation to be affixed this _2nd_

day of_ October, 2007 _

at _____ Washington, D.C. _____

_Barbara J. Hairston_
Barbara J. Hairston
      *(Signature)*
**Supervisory Dockets Officer**
      *(Title)*
 **Docket Operations**
      *Department of Transportation*

DOT F 2100.1 (6-06)

Skip Navigation



As of October 1, 2007, the Department of Transportation (DOT) and the Department of Homeland Security's United States Coast Guard (USCG) and Transportation Security Administration (TSA) will be migrating from the Docket Management System (DMS) to the government-wide Federal Docket Management System (FDMS) at http://www.regulations.gov.

Please Click Here to see the Federal Register Notice regarding the Migration.

DOT will be offering FDMS Informational session on October 3, 2007, (2-4 pm for the public) and October 4, 2007, (9-11 am for the public) in the DOT Conference Center/Multi-Media Room, West Building at 1200 New Jersey Avenue, SE, Washington, DC, If interested please Click Here to sign up for these sessions.

| Docket Search Results Displaying 1 thru 79 of 79 Records / Displaying 79 of 79 Submissions [Help] | | | | |
|---|---|---|---|---|
| Reverse Order | | | | |
| Document Number | Document Type | Filing Date | Title | Files |
| FHWA-2006-24134-1 | Federal Register Publication | 05/01/2006 | Notice of Proposed Rulemaking (NPRM); Request for Comments | PDF (83170 bytes) PDF (88456 bytes) 8 Pages |
| FHWA-2006-24134-2 | Comment(s) | 05/01/2006 | Barb Sachau - Comments | TXT (903 bytes) PDF (30177 bytes) 1 Page |
| FHWA-2006-24134-3 | Comment(s) | 05/03/2006 | Leo L. Kahn - Comments | TXT (312 bytes) PDF (29970 bytes) 8 Pages |
| FHWA-2006-24134-4 | Comment(s) | 05/19/2006 | William B. Trescott - Comments | PDF (72612 bytes) PDF (66945 bytes) 10 Pages |
| FHWA-2006-24134-5 | Comment(s) | 06/06/2006 | Anonymous - Comments | TXT (140 bytes) PDF (27215 bytes) 1 Page |
| FHWA-2006-24134-6 | Request | 06/08/2006 | Texas Department of Public Safety - Request for Information Regarding Section 1309 of SAFETEA-LU | TIF (216049 bytes) PDF (262440 bytes) 4 Pages |

| FHWA-2006-24134-7 | Comment(s) | 06/13/2006 | Michael C. Wagner - Comments | TXT (436 bytes) PDF (28795 bytes) 1 Page |
|---|---|---|---|---|
| FHWA-2006-24134-8 | Comment(s) | 06/23/2006 | Washington State Department of Transportation - Comments | TIF (155636 bytes) PDF (192985 bytes) 3 Pages |
| FHWA-2006-24134-9 | Comment(s) | 06/23/2006 | Truck Manufacturers Association - Comments | PDF (403484 bytes) PDF (382312 bytes) 2 Pages |
| FHWA-2006-24134-10 | Comment(s) | 06/23/2006 | Ohio State Highway Patrol - Comments | PDF (105086 bytes) PDF (105086 bytes) 2 Pages |
| FHWA-2006-24134-11 | Comment(s) | 06/27/2006 | Greyhound Lines, Inc. - Comments | TIF (98593 bytes) PDF (132171 bytes) 3 Pages |
| FHWA-2006-24134-12 | Comment(s) | 06/28/2006 | American Bus Association - Comments | TXT (5965 bytes) PDF (40909 bytes) 1 Page |
| FHWA-2006-24134-13 | Comment(s) | 06/30/2006 | JHT Holdings, Inc. - Comments | TIF (91912 bytes) PDF (128387 bytes) 2 Pages |
| FHWA-2006-24134-14 | Comment(s) | 06/30/2006 | Automobile Carriers Conference - American Trucking Associations - Comments | TIF (3853 bytes) PDF (134654 bytes) 3 Pages |
| FHWA-2006-24134-15 | Comment(s) | 06/30/2006 | American Trucking Associations -Comments | DOC (62464 bytes) PDF (144094 bytes) 5 Pages |
| FHWA-2006-24134-16 | Comment(s) | 06/30/2006 | American Association of State Highway and Transportation Officials - Comments | DOC (183296 bytes) PDF (102147 bytes) 3 Pages |
| FHWA-2006-24134-17 | Comment(s) | 06/30/2006 | The Owner-Operator Independent Drivers Association, Inc. - Comments | TIF (1232280 bytes) PDF (1449563 bytes) 28 Pages |
| FHWA-2006-24134-18 | Comment(s) | 06/30/2006 | Michigan Department of Transportation - Comments | PDF (23882 bytes) PDF (22589 bytes) 2 Pages |
| FHWA-2006-24134-19 | Comment(s) | 06/30/2006 | Illinois Department of Transportation - Comments | TIF (102143 bytes) PDF (137317 bytes) 3 Pages |
| FHWA-2006-24134-20 | Comment(s) | 06/30/2006 | Georgia Department of Public Safety - Comments | TIF (150485 bytes) PDF (193363 bytes) 3 Pages |
| FHWA-2006-24134-21 | Comment(s) | 07/03/2006 | California Department of Transportation - Comments | TIF (163414 bytes) PDF (196440 bytes) 4 Pages |
| FHWA-2006-24134-22 | Comment(s) | 06/30/2006 | National RV Dealers Association - Comments | DOC (41472 bytes) PDF (95591 bytes) 3 Pages |
| FHWA-2006-24134-23 | Comment(s) | 06/30/2006 | National Automobile Dealers Association - Comments | DOC (163840 bytes) PDF (110351 bytes) |

| | | | | 3 Pages |
|---|---|---|---|---|
| FHWA-2006-24134-24 | Comment(s) | 07/05/2006 | Recreation Vehicle Industry Association | TIF (7338915 bytes) PDF (1837751 bytes)  34 Pages |
| FHWA-2006-24134-25 | Comment(s) | 07/06/2006 | Canadian Trucking Alliance - Comments | PDF (132280 bytes) PDF (132195 bytes) 3 Pages |
| FHWA-2006-24134-26 | Letter(s) | 07/28/2006 | Congressman Don Young - Letter | TIF (57870 bytes) PDF (82870 bytes) 1 Page |
| FHWA-2006-24134-27 | Comment(s) | 07/13/2006 | General Teamsters 174 - Comments | PDF (1031470 bytes)  PDF (1022268 bytes)  28 Pages |
| FHWA-2006-24134-28 | Letter(s) | 08/14/2006 | Honorable Maria Cantwell - Ex Parte Letter | TIF (897627 bytes) PDF (941085 bytes) 9 Pages |
| FHWA-2006-24134-29 | Letter(s) | 09/06/2006 | David G. Reichert - Letter | TIF (142855 bytes) PDF (170735 bytes) 2 Pages |
| FHWA-2006-24134-30 | Letter(s) | 09/26/2006 | Various Submitters (3) - Letter | TIF (87993 bytes) PDF (95303 bytes) 1 Page |
| FHWA-2006-24134-31 | Comment(s) | 12/22/2006 | Peter M. Maginot - Comments | TXT (162 bytes) PDF (23930 bytes) 1 Page |
| FHWA-2006-24134-32 | Comment(s) | 12/21/2006 | Unknown Commenter | TXT (478 bytes) PDF (27466 bytes) 1 Page |
| FHWA-2006-24134-33 | Comment(s) | 12/27/2006 | Barb Sachau - Comments | TXT (349 bytes) PDF (24614 bytes) 1 Page |
| FHWA-2006-24134-34 | Comment(s) | 01/09/2007 | 97 Foot Long Multi-Trucks! | TIF (19943 bytes) PDF (31037 bytes) 1 Page |
| FHWA-2006-24134-35 | Comment(s) | 01/09/2007 | SAFETEA-LU | TIF (20534 bytes) PDF (31746 bytes) 1 Page |
| FHWA-2006-24134-36 | Letter(s) | 01/09/2007 | Letter and Article | TIF (745737 bytes) PDF (782138 bytes) 4 Pages |
| FHWA-2006-24134-37 | Comment(s) | 01/23/2007 | Robert M. Holter - Comments | TIF (181633 bytes) PDF (204276 bytes) 1 Page |
| FHWA-2006-24134-38 | Comment(s) | 01/23/2007 | B. M. Adamson - Comments | TIF (136535 bytes) PDF (159257 bytes) 1 Page |
| FHWA-2006-24134-39 | Comment(s) | 01/23/2007 | Sarah E. H. Meiring - Comments | TIF (112908 bytes) PDF (125797 bytes) |

| | | | | 1 Page |
|---|---|---|---|---|
| FHWA-2006-24134-40 | Comment(s) | 01/23/2007 | Jeff Sessions - Comments | TIF (187940 bytes) PDF (227035 bytes) 3 Pages |
| FHWA-2006-24134-41 | Federal Register Publication | 02/20/2007 | Final Rule | PDF (83587 bytes) PDF (89066 bytes) 9 Pages |
| FHWA-2006-24134-42 | Comment(s) | 02/23/2007 | Louis C. Harris, Jr. - Comments | TIF (18087 bytes) PDF (32926 bytes) 1 Page |
| FHWA-2006-24134-43 | Comment(s) | 02/23/2007 | Richard Patten - Comments | TIF (31594 bytes) PDF (55186 bytes) 1 Page |
| FHWA-2006-24134-44 | Comment(s) | 02/23/2007 | Mumsley Tumsley - Comments | TIF (14975 bytes) PDF (29051 bytes) 1 Page |
| FHWA-2006-24134-45 | Comment(s) | 02/23/2007 | Ilse Eden - Comments | TIF (7956 bytes) PDF (20795 bytes) 1 Page |
| FHWA-2006-24134-46 | Comment(s) | 02/23/2007 | Carol Witbeck - Comments | TIF (42447 bytes) PDF (68598 bytes) 1 Page |
| FHWA-2006-24134-47 | Comment(s) | 02/23/2007 | Sarah Newman - Comments | TIF (11240 bytes) PDF (22983 bytes) 1 Page |
| FHWA-2006-24134-48 | Comment(s) | 02/23/2007 | Susan Crites - Comments | TIF (14901 bytes) PDF (26344 bytes) 1 Page |
| FHWA-2006-24134-49 | Comment(s) | 02/23/2007 | Michael Nolan - Comments | TIF (14684 bytes) PDF (30536 bytes) 1 Page |
| FHWA-2006-24134-50 | Comment(s) | 02/23/2007 | Nancy Guyton - Comments | TIF (22549 bytes) PDF (40803 bytes) 1 Page |
| FHWA-2006-24134-51 | Comment(s) | 02/23/2007 | Maddy De Leon - Comments | TIF (11279 bytes) PDF (21463 bytes) 1 Page |
| FHWA-2006-24134-52 | Comment(s) | 02/23/2007 | Lucile J. Taber - Comments | TIF (63207 bytes) PDF (80804 bytes) 2 Pages |
| FHWA-2006-24134-53 | Comment(s) | 02/23/2007 | Leslie Brooks - Comments | TIF (29409 bytes) PDF (47183 bytes) 1 Page |
| FHWA-2006-24134-54 | Comment(s) | 02/23/2007 | Suzie Kidder - Comments | TIF (34807 bytes) PDF (51427 bytes) 1 Page |
| FHWA-2006-24134-55 | Comment(s) | 02/23/2007 | Jeff Granger - Comments | TIF (34451 bytes) PDF (47352 bytes) 1 Page |
| FHWA-2006-24134-56 | Comment(s) | 02/23/2007 | Louise Bennett - Comments | TIF (12963 bytes) PDF (21547 bytes) |

| | | | | 1 Page |
|---|---|---|---|---|
| FHWA-2006-24134-57 | Comment(s) | 02/23/2007 | Robert McManus - Comments | TIF (47753 bytes) PDF (62173 bytes) 1 Page |
| FHWA-2006-24134-58 | Comment(s) | 02/23/2007 | Gerry Sandler - Comments | TIF (15809 bytes) PDF (26819 bytes) 1 Page |
| FHWA-2006-24134-59 | Comment(s) | 02/23/2007 | James F. Britton - Comments | TIF (23595 bytes) PDF (37764 bytes) 1 Page |
| FHWA-2006-24134-60 | Comment(s) | 02/23/2007 | Peggy Conroy - Comments | TIF (20461 bytes) PDF (28326 bytes) 1 Page |
| FHWA-2006-24134-61 | Comment(s) | 02/23/2007 | Daniel C. Shively - Comments | TIF (13575 bytes) PDF (21023 bytes) 1 Page |
| FHWA-2006-24134-62 | Comment(s) | 02/23/2007 | M. Stitzel - Comments | TIF (20617 bytes) PDF (30739 bytes) 1 Page |
| FHWA-2006-24134-63 | Comment(s) | 02/28/2007 | Reverend Albert G. Cohen - Comments | TIF (18258 bytes) PDF (35565 bytes) 1 Page |
| FHWA-2006-24134-64 | Comment(s) | 02/28/2007 | Dr. Virginia H. Bennett - Comments | TIF (11873 bytes) PDF (22123 bytes) 1 Page |
| FHWA-2006-24134-65 | Comment(s) | 02/28/2007 | Hugh Dunne - Comments | TIF (22031 bytes) PDF (32450 bytes) 1 Page |
| FHWA-2006-24134-66 | Comment(s) | 02/28/2007 | Brad Wolbert - Comments | TIF (25690 bytes) PDF (41753 bytes) 1 Page |
| FHWA-2006-24134-67 | Comment(s) | 02/28/2007 | Tricia Everett - Comments | TIF (12631 bytes) PDF (27743 bytes) 1 Page |
| FHWA-2006-24134-68 | Comment(s) | 02/28/2007 | Anonymous - Comments | TIF (6241 bytes) PDF (23441 bytes) 1 Page |
| FHWA-2006-24134-69 | Comment(s) | 02/28/2007 | Julie Fanselow - Comments | TIF (62579 bytes) PDF (82233 bytes) 2 Pages |
| FHWA-2006-24134-70 | Petition for Reconsideration | 03/08/2007 | William B. Trescott - Petition to Reconsider Size and Weight Enforcement and Regulations Final Rule | PDF (39726 bytes) PDF (41412 bytes) 9 Pages |
| FHWA-2006-24134-71 | Comment(s) | 03/12/2007 | Alan Rosenberg - Comments | TIF (19717 bytes) PDF (22825 bytes) 1 Page |
| FHWA-2006-24134-72 | Comment(s) | 03/12/2007 | Bill Vigrass - Comments | TIF (217773 bytes) PDF (270859 bytes) 3 Pages |
| FHWA-2006-24134-73 | Comment(s) | 03/12/2007 | Anonymous - Comments | TIF (45417 bytes) |

| | | | | PDF (61139 bytes) 1 Page |
|---|---|---|---|---|
| FHWA-2006-24134-74 | Comment(s) | 03/12/2007 | Bill Vigrass - Comments | TIF (22633 bytes) PDF (35314 bytes) 1 Page |
| FHWA-2006-24134-75 | Comment(s) | 03/12/2007 | Simon Stanfield - Comments | TIF (112426 bytes) PDF (140797 bytes) 2 Pages |
| FHWA-2006-24134-76 | Comment(s) | 03/12/2007 | Susan Chew - Comments | TIF (11258 bytes) PDF (24006 bytes) 1 Page |
| FHWA-2006-24134-77 | Comment(s) | 03/12/2007 | Joseph Snyder - Comments | TIF (69365 bytes) PDF (95164 bytes) 3 Pages |
| FHWA-2006-24134-78 | Comment(s) | 03/19/2007 | General Teamsters Local 174 - Comments | PDF (234525 bytes) PDF (234823 bytes) 5 Pages |
| FHWA-2006-24134-79 | Other | 08/14/2007 | Trescott Intermodal Rail Service - Withdrawal of Petition to Reconsider | PDF (20066 bytes) PDF (21745 bytes) 3 Pages |
| Reverse Order | | | | |
| Search Again | | | | |

The filing you are making is a public filing. Any information that you submit will be available to the general public.



DMS2000 Tuesday, October 02, 2007

Privacy Statement



U.S. Department
of Transportation

Federal Highway
Administration

00 New Jersey Avenue, SE.
Washington, DC 20590

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT – 4 2007

RECEIVED

OCT ☒ 4 2007

In Reply Refer To:
HCC-30

Mr. Mark J. Langer
Clerk
U.S. Court of Appeals for the District of Columbia Circuit
333 Constitution Ave., N.W. – Room 5523
Washington, D.C. 20001-2866

<u>**Re:**</u>  <u>Trescott v. Federal Highway Administration</u>, No. 07-1327

Dear Mr. Langer:

Pursuant to Rule 17 of the Federal Rules of Appellate Procedure, enclosed for filing in the above-referenced petition for review is the Certified List of Documents Comprising the Administrative Record for the Federal Highway Administration's February 20, 2007, commercial vehicle size and weight enforcement regulations, the regulations under review in this case.

Thank you for your attention to this matter.

ORIGINAL

Sincerely yours,

Harold Aikens Jr.

L. Harold Aikens, Jr.
Assistant Chief Counsel for
   Program Legal Services Division

**AMERICAN
ECONOMY**



1076227

Received
Mail Room

**William B. Trescott**

OCT 26 2007

United States Court of Appeals
District of Columbia C

www.truckingvideo.com
8028 Farm to Market Road 457
Bay City, Texas 77414

Phone 979-244-3134
Email trescott@truckingvideo.com

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   OCT 2 6 2007

**CLERK**

October 22nd, 2007

Mark J. Langer
Clerk of the Court of Appeals
District of Columbia Circuit
333 Constitution Avenue N.W., Room 5523
Washington D.C. 20001-2866

<u>**Re:**</u>  Trescott v. Federal Highway Administration, No. 07-1327

Dear Mr. Langer,

Pursuant to Rules 10(b)(2) & 10(e)(2)(c) of the Federal Rules of Appellate Procedure, enclosed for filing in the above referenced petition for review is evidence of "irreparable injury" that will occur if briefing in this case is further delayed and which constitutes a "substantial challenge" to respondents' assertion that "petitioner has failed to meet the standards for expedited consideration."

Sincerely,

William B. Trescott

cc: Kelsi Corkran, Mark Stern, James Ray, D.J. Gribbin



# Occupants Killed in Motor Vehicle Crashes, by Type of Vehicle

| Type of Vehicle | Year | | Change | % Change |
| --- | --- | --- | --- | --- |
| | 2005 | 2006 | | |
| Passenger Vehicles | 31,549 | 30,521 | -1,028 | -3.3% |
| Passenger Cars | 18,512 | 17,800 | -712 | -3.8% |
| LTVs* | 13,037 | 12,721 | -316 | -2.4% |
| Vans | 2,112 | 1,802 | -310 | -15% |
| SUVs | 4,831 | 4,910 | +79 | +1.6% |
| Pickup Trucks | 6,067 | 5,984 | -83 | -1.4% |
| Large Trucks | 804 | 805 | +1 | +0.1% |
| Medium Trucks | 122 | 114 | -8 | -6.6% |
| Heavy Trucks | 682 | 691 | +9 | +1.3% |
| Other Vehicles** | 550 | 526 | -24 | -4.4% |
| Unknown Vehicle Type | 167 | 240 | +73 | ------- |

*LTV (Light Trucks & Vans) = Pickup Truck, Van, Sport Utility Vehicle and other/unknown LTVs
**Includes vehicle occupant fatalities in buses and other, e.g., farm equipment, construction equipment, etc., vehicle types. Excludes motorcycle riders.                    *Source: FARS*



# Occupants Killed in Motor Vehicle Crashes, by Type of Vehicle

| Type of Vehicle | Year | | Change | % Change |
| --- | --- | --- | --- | --- |
| | 2005 | 2006 | | |
| Passenger Vehicles | 31,549 | 30,521 | -1,028 | -3.3% |
| Passenger Cars | 18,512 | 17,800 | -712 | -3.8% |
| LTVs* | 13,037 | 12,721 | -316 | -2.4% |
| Vans | 2,112 | 1,802 | -310 | -15% |
| SUVs | 4,831 | 4,910 | +79 | +1.6% |
| Pickup Trucks | 6,067 | 5,984 | -83 | -1.4% |
| Large Trucks | 804 | 805 | +1 | +0.1% |
| Medium Trucks | 122 | 114 | -8 | -6.6% |
| Heavy Trucks | 682 | 691 | +9 | +1.3% |
| Other Vehicles** | 550 | 526 | -24 | -4.4% |
| Unknown Vehicle Type | 167 | 240 | +73 | -------- |

*LTV (Light Trucks & Vans) = Pickup Truck, Van, Sport Utility Vehicle and other/unknown LTVs
**Includes vehicle occupant fatalities in buses and other, e.g., farm equipment, construction equipment, etc., vehicle types. Excludes motorcycle riders.                    *Source: FARS*


www.nhtsa.gov

# Occupants Killed in Motor Vehicle Crashes, by Type of Vehicle

| Type of Vehicle | Year | | Change | % Change |
| --- | --- | --- | --- | --- |
| | 2005 | 2006 | | |
| Passenger Vehicles | 31,549 | 30,521 | -1,028 | -3.3% |
| Passenger Cars | 18,512 | 17,800 | -712 | -3.8% |
| LTVs* | 13,037 | 12,721 | -316 | -2.4% |
| Vans | 2,112 | 1,802 | -310 | -15% |
| SUVs | 4,831 | 4,910 | +79 | +1.6% |
| Pickup Trucks | 6,067 | 5,984 | -83 | -1.4% |
| Large Trucks | 804 | 805 | +1 | +0.1% |
| Medium Trucks | 122 | 114 | -8 | -6.6% |
| Heavy Trucks | 682 | 691 | +9 | +1.3% |
| Other Vehicles** | 550 | 526 | -24 | -4.4% |
| Unknown Vehicle Type | 167 | 240 | +73 | ------- |

*LTV (Light Trucks & Vans) = Pickup Truck, Van, Sport Utility Vehicle and other/unknown LTVs
**Includes vehicle occupant fatalities in buses and other, e.g., farm equipment, construction equipment, etc., vehicle types. Excludes motorcycle riders.

*Source: FARS*

2006 Annual Assessment of Motor Vehicle Crashes

September 2007

NHTSA's National Center for Statistics & Analysis

55

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 07-1327**                          **September Term, 2007**


**Filed On:**

William B. Trescott,
      Petitioner

    v.

Federal Highway Administration and Secretary of
Transportation,
      Respondents



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   NOV 1 6 2007

**CLERK**


**BEFORE:**   Sentelle, Randolph, and Brown, Circuit Judges

### O R D E R

Upon consideration of the motion to expedite, the opposition thereto, and the supplement to the motion to expedite, it is

**ORDERED** that the motion be denied.  Petitioner has not satisfied the stringent standards required for such relief.  See <u>D.C. Circuit Handbook of Practice and Internal Procedures</u> 33-34 (2006).


**Per Curiam**

# *Trescott Intermodal Rail Service*

www.truckingvideo.com
8028 Farm to Market Road 457
Bay City, Texas 77414



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEC - 3 2007

RECEIVED

November 28th, 2007

Mark J. Langer
Clerk of the Court of Appeals
District of Columbia Circuit
333 Constitution Avenue N.W., Room 5523
Washington D.C. 20001-2866

Re: *Trescott v. FHWA et. al.* #07-1327

Dear Mr. Langer,

Pursuant to Local Circuit Rule 34(i), I intend to use exhibits during argument (see attached computer animation incorporated by reference in Docket No. FHWA–2006–24134-4, RIN 2125–AF17 pages 2,3, & 7). The use of exhibits is justified because few outside the trucking industry are aware of the important differences between intermodal vehicles and long haul trucks.

Sincerely,

William B. Trescott

cc: Kelsi Corkran, Mark Stern, James Ray, D.J. Gribbin



# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

## No. 07-1327                    September Term, 2007

**Filed On:**

William B. Trescott,
         Petitioner

     v.

Federal Highway Administration and Secretary of
Transportation,
         Respondents



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    DEC 2 7 2007

CLERK

### O R D E R

It is **ORDERED**, on the court's own motion, that the remainder of the briefing schedule be established as follows:

        Respondents' Brief      --     February 1, 2008

        Petitioner's Reply Brief    --     February 15, 2008

                         **FOR THE COURT:**
                         Mark J. Langer, Clerk

           BY:                      
                         Linda Jones
                         Deputy Clerk

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FEB - 1 2008

RECEIVED

U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave., NW, Rm 7216
Washington, DC 20530

Tel: (202) 514-3159
Fax: (202) 514-9405

February 1, 2008

Mr. Mark Langer
Clerk of the United States Court of Appeals
  for the District of Columbia Circuit
333 Constitution Ave., NW
Washington, DC 20001

RE:    Trescott v. Federal Highway Administration, et al.
       No. 07-1327

Dear Mr. Langer:

       Please find enclosed for filing in the above-referenced matter an original and fourteen copies
of the Brief for the Respondents. Thank you for your attention to this matter.

                              Sincerely,

                              Kelsi Brown Corkran
                              Attorney, Appellate Staff
                              Civil Division

Enclosure

cc:    William B. Trescott, pro se petitioner

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

William B. Tabott

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se NY

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**DEFENDANTS**

Federal Highway Admn; etac

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:08-cv-00731
Assigned To : Kennedy, Henry H.
Assign. Date : 4/28/2008
Description: Pro Se General Civil

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ◉ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
◉ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

□ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  ■ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

*USCA for DC Circuit*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** □ YES  ⊙ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES  ■ NO    If yes, please complete related case form.

DATE *4.28.08*    SIGNATURE OF ATTORNEY OF RECORD *ωℂ.ⅅ*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.