UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
MAY 1 6 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| WILLIAM B. TRESCOTT ) | |
| ) | |
| Petitioner, ) | |
| v. ) | |
| ) | |
| THE FEDERAL HIGHWAY ) | No. 08-0731 HHK |
| ADMINISTRATION, ) | |
| THE SECRETARY OF ) | (formerly 07-1327) |
| TRANSPORATION, ) | |
| and THE UNITED STATES, ) | |
| ) | |
| Respondents. ) | |

## MOTION TO EXPEDITE

On Petition for Review of a Final Rule
Issued by the Federal Highway Administration

Because of improper handling by the Court of Appeals, this case has acquired a criminal aspect and expedited handing warranted.

## STATEMENT OF FACTS

On April 24th, 2006, I filed a Supplemental Memorandum in *Trescott v. Peters*, 05 CV 00678-18, alleging that District Court granted *Respondents'* Motion for Extension of Time, 8, on false pretenses. *Respondents* claimed that "agency input" would not be available until July 15th, 2005. Reputable organizations alleged that this additional time was used to conduct an illegal

1

meeting with trucking industry officials on or about July 14th, 2005.[1]

Two days later, on April 26th, 2006, four students from <u>Taylor University</u> were killed in a sensational truck crash featured in a two hour special on Dateline NBC-TV after a victim was buried in the wrong grave while another was cared for by the dead girl's parents. On May 16th, 2006, two weeks later, President Bush appointed an alumnus of <u>Taylor University</u>, police officer John H. Hill, as Administrator of the Federal Motor Carrier Safety Administration (FMCSA) in violation of a statutory requirement that the Administrator of FMCSA be "*a person with professional experience in motor carrier safety.*" 49 U.S.C. § 113(c). Neither Hill, nor his predecessors had accumulated the hundreds of thousands of crash free miles and numerous safety awards driving commercial vehicles one would normally need to qualify for employment as a motor carrier safety professional. Two weeks later on May 30th, 2006, despite an apparent lack of prior experience as a judge, President Bush appointed his Assistant and Staff Secretary to sit on the DC Court of Appeals.[2] According to the Fatality Analysis Reporting System, A-6, fifty additional truckers have been killed on the job since Hill became Chief Safety Officer of FMCSA and trucker fatalities rose to a 17 year high.

---

[1] http://www.citizen.org/documents/ACFD96.pdf
[2] http://www.cadc.uscourts.gov/internet/home.nsf/Content/VL+-+Judge+-+BMK

## STATEMENT OF POINTS AND AUTHORITIES

If, hypothetically, the president of a hospital allowed a police officer from Virginia Tech to impersonate a doctor and cause the deaths of fifty Koreans [3] in revenge for the shootings there, it would not be in the public interest for his secretary or assistant to be seated as a judge handling the case. While there is a one in five chance that President Bush's Secretary at the time he appointed the impostor was assigned to rule on my case randomly, there is a four out of five chance that the decision to overrule the decision of District Court (*Pet.* Reply Br. at 7) was motivated in part by a desire to delay judgment for political purposes until after the election because, as Chairman of the Senate Commerce Committee, Presidential Candidate John McCain confirmed Hill and other unqualified people without proper hearings.

I filed this petition in the Court of Appeals because the Secretary of Transportation failed to respond to my petition to begin a proceeding to enforce a provision of the *Motor Carrier Safety Act,* 49 U.S.C. § 31136(a), within 120 days as required under 49 U.S.C. § 30162(d). According to the plain language of 28 U.S.C. § 2342(3)(A), the Court of Appeals has exclusive jurisdiction to enjoin all orders of the Secretary pursuant to this part.

---

[3] The gunman in the Virginia Tech shooting was Korean.

3

In any other industry, an imposter impersonating a skilled professional could easily be removed by simply calling the police. Truckers can't do that because the impostors <u>are</u> the police. Now we can't get a fair hearing either because one of the judges who is supposed to have exclusive jurisdiction may have been the person who carried out the orders to appoint the impostors.

If a police officer from Virginia Tech was impersonating a doctor, the question before the court would <u>not</u> be "did the police act rightly to protect us from the evil Koreans"; it would be, "are innocent Koreans being harmed?" Similarly, the question before This Court is not whether the Federal Highway Administration acted rightly to protect the highways from the evil truckers, but whether the Secretary is violating the *Motor Carrier Safety Act,* 49 U.S.C. § 31136(a), (*Pet.* Reply Br. at 11) by not taking <u>immediate corrective action</u> to protect truckers from unscrupulous employers who don't want to equip their trucks with necessary safety devices.

The National Highway Traffic Safety Administration took <u>immediate corrective action</u> two days before *Respondents'* brief was due on January 30th (Docket # NHTSA–2008–0015, RIN 2127–AG51). It proposed a roof crush standard of <u>2½ times the weight of the vehicle</u> for trucks up to 10,000 pounds —the limit of its statutory authority—which they believe will save the lives of

4

476 Americans per year. 73 FR 5485. The Court may wish to note that I asked for only <u>2 times the weight of the vehicle</u> (*Pet.* Init. Br. at 42).

Congress took <u>immediate corrective action</u> by scheduling its first motor carrier safety hearing in five years [4] <u>exactly 120 days to the day</u> after my Petition was received by the Secretary on March 13th, 2007, but the Federal Motor Carrier Safety Administrator made a misleading statement that "2005 enjoyed one of the lowest large-truck fatality rates in 30 years"[5] when, in fact, <u>trucker fatalities rose 17% in just three years</u> and reached a <u>16 year high in 2005!</u>[6] A-6. The number of truck drivers killed in multi-vehicle crashes rose 36%—<u>a 30% real increase</u> even after adjusting for changes in tonnage and miles driven.

The Secretary's disparate treatment of truckers who are required by their employers to drive trucks that weigh more than 10,000 pounds violates 14th Amendment rights to equal treatment under the law: Why should increased roll over protection be <u>required</u> on trucks that weigh 10,000 pounds and not on trucks that weigh just one pound more? Why should roll over

---

[4] No truck safety hearing was held by Republicans between 2002 and 2007. The New York Times alleged that from 2000 to 2006, the trucking industry directed more than $14 million in campaign contributions to Republicans and its donations and lobbying fees were about $37 million from 2000 to 2005. (Stephen Labaton, Dec. 3, 2006)
[5] July 11th, 2007 testimony of FMCSA Administrator John Hill
[6] Fatality Analysis Reporting System, www-fars.nhtsa.dot.gov

protection be <u>illegal</u> on 80,000 pound trucks when it is <u>required</u> on 10,000 pound trucks?

Congress <u>statutorily limited</u> the Federal Highway Administration's authority to "highway safety programs" and "highway-related aspects of pedestrian safety." 49 U.S.C. § 104(c).  Any reasonable person will agree that a commercial motor vehicle is <u>not</u> a type of highway just as an airplane is not a type of air and a boat is not a type of water.  Congress titled Chapter 311 of Title 49: "**<u>Commercial Motor Vehicle Safety</u>**" and listed it under **SUBTITLE VI—MOTOR VEHICLE AND DRIVER PROGRAMS**; not 'truck related aspects of highway safety.'  A hospital janitor may be expert at mopping floors to make them safe for doctors just as the Federal Highway Administration is expert at repairing roads to make them safe for truckers, but repairing roads does not make the Federal Highway Administration qualified to make decisions affecting motor carrier safety any more than mopping floors makes a janitor qualified to make decisions about medical safety.  **<u>The Federal Highway Administration has no authority under Chapter 311</u>**.  If a police officer or janitor was making medical decisions at a hospital, the Court would be compelled to act quickly to protect the patients, so the Court must also act quickly to protect truckers.

I have provided the Court with ample evidence demonstrating that expedition is required to avoid irreparable injury that will result if the size and weight limits are not vacated (*Pet.* Init. Br. at 42). A-6. I have also shown that the disparate treatment of truckers compared to drivers of recreational vehicles and smaller trucks is arbitrary and capricious (*Pet.* Init. Br. at 50-62). I believe I have met the standards for expedited consideration of my claims set forth in the D.C. Circuit Handbook of Practice and Internal Procedures. Whenever a case is transferred to cure want of jurisdiction it must proceed as if it had been filed on the date it was filed in the court from which it is transferred. 28 U.S.C. § 1631. This case was filed on August 30th, 2007. Considering the number of lives at stake, almost 5,000 per year, *Respondents* have shown a murderous disregard for the lives and safety of their fellow Americans and the Court of Appeals has taken too long with this case already.

Aside from the obvious risks of delay to crash victims, the Court should also consider the harm being done to the nation's economy by the agency's refusal to legalize more efficient modern trucks. In a recent hearing on May 6th, 2008, the House Transportation Committee learned that the cost of food rose 4% in 2007 primarily because diesel fuel rose 48%,[7] and that all

---

[7] Statement of James L. Oberstar, Chairman of the House Transportation Committee

but seven states have failed to grant exceptions for the additional weight associated with anti-idling devices needed to conserve fuel.[8] People who bought large sport utility vehicles to protect themselves from trucks because they cannot afford health insurance can no longer afford to buy gas. The sooner the arbitrary definition of "Commercial Motor Vehicle" in 23 C.F.R. § 658.5 is vacated, the sooner safer, more efficient prototype trucks can be tested without fear of being searched without search warrants. It is difficult to imagine that technology could be improved in any industry if engineering prototypes were routinely subjected to unreasonable searches and seizures. I have personally been detained for testing such devices as dynamic wheel balancers, glued on brake pads, and a spring loaded cab jack. It should be noted that almost two thirds of General Motors' unibody truck prototypes, most of which were sold as motor homes, bookmobiles, and portable health clinics to avoid being searched, are believed to still be on the road after more than 30 years because they continue to get comparable fuel economy to modern Diesel motor homes—despite being handicapped by obsolete 1970's era gasoline engines.[9] The inability to test full size unibody trucks has slowed the development of intermodal vehicles because they share many innovative

---

[8] Statement of Michael S. Card on behalf of the American Trucking Associations (ATA)
[9] http://en.wikipedia.org/wiki/GMC_motorhome

drive train and suspension components not found on obsolete 18 wheelers.

The Court of Appeals ordered briefing to be concluded on February 15th and decided that oral arguments will not assist the Court, so District Court should not consider this transfer as appropriate justification for further delay in vacating these deadly regulations. A proposed order is attached.

Respectfully Submitted

*/signature/*

---

William B. Trescott

Author of:
*So You Want to Drive a Truck?*
*Sargent Texas Reckless Driving Video*
*How to Succeed as an Owner-Operator*
*The Secretary of Transportation's Message to Truckers*
*Creation of a Minority Group—The New Danger in America's Trucks*
Congressman Ron Paul's *'The Safer Truck Act'*
(HR 1248, 108th Congress; HR 2083, 107th Congress)
Inventor of:
*Self-loading Vehicle for Shipping Containers*
(U.S. Pats. 6,910,844 & 6,840,724)
*Automatic Intermodal Railway Car Coupler*
(U.S. Pats. 6,776,299 & 7,070,062)
*Child Safe Stackable Shelf Bin*
(U.S. Pat. 6,494,313)
*www.truckingvideo.com*
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM B. TRESCOTT** | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| **THE FEDERAL HIGHWAY** | ) | No. 08-0731 HHK |
| **ADMINISTRATION,** | ) | |
| **THE SECRETARY OF** | ) | (formerly 07-1327) |
| **TRANSPORATION,** | ) | |
| **and THE UNITED STATES,** | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Upon examination of the record and the presentations in the briefs, it is hereby ORDERED that Sections 658.5, 658.15, and 658.17(b) of Title 23 of the Code of Federal Regulations are VACATED, with remand to the Federal Motor Carrier Safety Administration for promulgation of performance based safety standards as required in Chapter 311, Subchapter III of Title 49 for cargo weight, lateral stability, intermodalism, hybrid power trains, axles with increased track width, and modern safety devices.

It is further ORDERED that the Secretary vacate any other regulations promulgated under Title 23 of the Code of Federal Regulations that lack statutory authority under Title 23 of the United States Code.

SO ORDERED

_____
UNITED STATES DISTRICT JUDGE

Copies to:

William B. Trescott
8028 Farm to Market Road 457
Bay City, Texas 77414

Beverly M. Russell
Assistant US Attorney
DC Civil Division
555 Fourth Street NW
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I, William B. Trescott, hereby certify that I caused to be served a copy of the foregoing Motion to Expedite, Proposed Order, and Motion to Allow Electronic Case Filing on the following by first class mail:

James Ray
Chief Counsel
Federal Highway Administration
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

D.J. Gribbin
General Counsel
U.S. Department of Transportation
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

Beverly M. Russell
Assistant US Attorney
DC Civil Division
555 Fourth Street NW
Washington, D.C. 20530

Michael B. Mukasey
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

_____
William B. Trescott