UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM B. TRESCOTT                )
                                   )
            *Plaintiff*,            )
                                   )
v.                                 )
                                   )
THE FEDERAL HIGHWAY                )    No. 08-0731 HHK
ADMINISTRATION,                    )
THE SECRETARY OF                   )    (formerly 07-1327)
TRANSPORATION,                     )
and THE UNITED STATES,              )
                                   )
            *Defendants*.           )

RECEIVED
JUN 1 9 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

On Petition for Review of a Final Rule
Issued by the Federal Highway Administration

*Defendants* have moved to dismiss on grounds that the rules being petitioned for review are <u>long standing</u> and are <u>statutorily mandated</u>. No one disputes that the rules being questioned are long standing—but they are <u>not</u> statutorily mandated. Congress provided a procedure for changing long standing rules for <u>safety reasons</u> in 49 U.S.C. § 30162. The DC Court of Appeals has ordered District Court to consider whether this procedure was followed pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 704.

1

As *Defendants* asserted in their Brief for the Respondents at 3, the current width limitation enacted in the *Surface Transportation Act of 1982* is 102 inches. If they had ever bothered to actually measure a truck, however, they would have discovered that the overall width of almost every 18 wheeler is 114 inches, not 102 inches—a fact that can easily be ascertained by rolling down the windows and stretching a measuring tape between the mirrors. This width is legal because Congress provided a long standing exemption to the size and weight limits for safety devices such as mirrors. 49 U.S.C. § 31113(b). B-7. The Court should note that Section 31113(b) is missing from *Respondent's* addendum. A.13. No one disputes the statutory 102 inch width limit for non-safety components or the "bridge law" requirement that heavy trucks be equipped with additional axles. The question the Court of Appeals has remanded District Court to consider is whether proper procedures were followed to exempt modern safety devices that have recently been invented such as rear view video cameras, crash absorbent body panels, and axles positioned outward from the side of the vehicle to provide better stability, stopping ability, roll over protection, and intermodal capability—as well as reasonable cargo weight limits to decriminalize these safety features as required by the *Motor Carrier Safety Act*. 49 U.S.C. § 31136(a).

2

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

*Defendants* have not disputed that an illegal meeting occurred in July 2005 between officials of the Federal Motor Carrier Safety Administration (FMCSA) and trucking industry officials likely to be put out of business if modern intermodal technology is decriminalized.[1] They also have not disputed that trucking industry officials provided a large amount of campaign donations.[2] They have not disputed that four congressmen who had budgetary control over the agency, including a Committee Chairman who is under investigation, pressured the agency to violate statutes outside of normal parliamentary procedure and that the Secretary of Transportation resigned during the rulemaking.[3] *Defendants* cannot dispute that shortly after leaving me a message that the Federal Highway Administration (FHWA) intended to respond to my petition—which I could play in court—the person in charge of the rulemaking left another message that he was no longer part of FHWA's size and weight team. *Defendants* can hardly claim that proper administrative procedure was followed if the man lost his job over it.

---

[1] http://www.citizen.org/documents/ACFD96.pdf, Pet. Mot. to Exp. at 2
[2] Pet. Init. Br. at 37 note 21, Pet. Mot. to Exp. at 5 note 4—The New York Times alleged that from 2000 to 2006, the trucking industry directed more than $14 million in campaign contributions to Republicans and its donations and lobbying fees were about $37 million from 2000 to 2005. (Stephen Labaton, Dec. 3, 2006)
[3] Pet. Init. Br. at 34 & 35, A-1, A-5, Pet. Reply Br. at 12 & 13

## II. ARGUMENT

The likely reason that the Federal Highway Administration did not respond to my petition as required under 49 U.S.C. § 30162 was that the House Transportation Committee summoned the FMCSA Administrator to testify on the day the Secretary's response to my petition was due,[4] and <u>not</u> the FHWA Administrator—establishing Congressional intent that FMCSA should make decisions related to commercial motor vehicle safety in the future, and <u>not</u> FHWA. *Defendants* can no longer rely on the argument that longstanding Congressional interpretation makes it valid just because a particular committee chairman had refused to hold an oversight hearing for five years.[5] A claim of unlawful or unreasonable delay establishes court jurisdiction even when there has been no final agency order and the relief sought is an order requiring the agency to hold a hearing. *Machinists & Aerospace Workers v. National Mediation B.*, 425 F2d 527(1970).

### A. My Claims are Not Speculative

*Defendants* have asked District Court to dismiss my case pursuant to Rules 12(b)(1) & (6). Rule 12(b) clearly states that a motion making any of

---

[4] July 11th, 2007 testimony of FMCSA Administrator John Hill
[5] No truck safety hearing was held under Republican leadership between 2002 and 2007, but a motor carrier safety hearing was held under Democratic leadership July 11th, 2007 exactly 120 days to the day after my petition to reconsider was received March 13th.

these defenses shall be made <u>before</u> pleading. The Court of Appeals has already considered these objections (see Brief for the Respondents at 8) and has ruled that transfer to District Court is in the interest of justice. Even so, as *Defendants* stated in their Memorandum at 5, citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1965 (2007), before this matter can be dismissed for failure to state a claim, District Court must first establish that <u>none</u> of my claims rise above a speculative level. There is nothing speculative about the <u>thousands of dollars</u> I have lost on patent application fees, issue fees, and attorney fees to obtain my patents—which the agency has now made worthless—not to mention the tens of thousands of dollars of lost income during the time I have been forced to remain unemployed (See attached Affidavit). The Court should not consider lightly the costs of developing new technology or the thousands of dollars that are instantly lost if an agency demonstrates undue bias toward a particular entrepreneur. I can provide a precise accounting of the amounts of my losses if it would please the Court.

The basis for *Defendants'* motion appears to be that the exception for safety devices in Section 31113(b) either does not exist (because it is missing from *Respondent's* Addendum A.13) or that it is in limbo because the Secretary never transferred this authority to FMCSA as required in § 113(f).

64 FR 56270. Therefore, they claim that petitioning the Secretary for a new safety standard under § 30162 challenges a ban on new technology in place since 1984—which is time barred. Section 31113(b) is <u>not</u> time barred. As stated in my Initial Brief at 39, the Supreme Court recently affirmed:

> "...a litigant to whom Congress has 'accorded a procedural right to protect his concrete interests' ...the right to challenge agency action unlawfully withheld...'can assert that right without meeting all the normal standards for redressability and immediacy...if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."
> *Massachusetts v. EPA,* 549 U. S. ___(2007) (slip op., at 14) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U. S., at 572).

Therefore, I do not have to prove that I will be a millionaire if the Court grants my petition—only that some possibility exists that the Secretary will reconsider FHWA's ban on modern safety devices and restore the value of my intellectual property if remanded by District Court. Just as a lottery ticket retains its value until the day of the lottery, intellectual property retains a value equal to its cost until it succeeds or fails in the marketplace.

Because the Agency changed the definition of "Commercial Motor Vehicle" in Section 658.5, B-8, 72 FR 7748, to replace a performance based standard with a design standard in contradiction of the statutory definition, 49 U.S.C. § 31101, B-6, without stating **legal reasons** for exempting

6

sunshades on recreational vehicles and <u>not</u> safety features on intermodal vehicles after Congress <u>prohibited</u> the Secretary from regulating these vehicles, 49 U.S.C. §§ 13503(b)(1) & 13506(a)(11), FHWA violated *The Regulatory Flexibility Act*, 5 U.S.C. §§ 603(c)(3) & 604(a)(2). As a small entity adversely affected by final agency action causing a loss in the value of my intellectual property (which presently can be used only for recreational purposes) I am entitled to judicial review under 5 U.S.C. §§ 611(a)(1), 553, & 704. As *Defendants* have admitted in their Memorandum at 6, and the Court of Appeals for the District of Columbia has already ruled, I can assert this claim in District Court pursuant to 28 U.S.C. § 1331.

**B. Basis for Vacatur**

Because transportation workers are exempt from the *Fair Labor Standards Act*, 29 U.S.C. § 213(b), and most Occupational Safety and Health Administration (OSHA) regulation, I claim (see Init. Br. at 15) that truckers have a <u>procedural right</u> under the 14th Amendment for their safety to be protected by someone with "professional experience in motor carrier safety" as required by Congress in 49 U.S.C. §§ 113(c) & (f)(1) just as workers in other industries are protected by administrative procedures and safety regulations promulgated by industrial safety professionals at OSHA.

### i. FHWA has No Authority to Regulate Commercial Motor Vehicle Length and Width

Congress <u>statutorily limited</u> the Federal Highway Administration's authority to "highway safety programs" and "highway-related aspects of pedestrian safety." 49 U.S.C. § 104(c). As stated in my Motion to Expedite at 6, a commercial motor vehicle is <u>not</u> a type of highway just as an airplane is not a type of air. Congress enacted commercial motor vehicle length and width limitations in Chapter 311 of Title 49, which is titled: "**<u>Commercial Motor Vehicle Safety</u>**" and listed it under **SUBTITLE VI—MOTOR VEHICLE AND DRIVER PROGRAMS**. Congress <u>did not</u> enact length and width limitations in Title 23. As stated in my Reply Brief at 10, mathematical formulae used by motor carrier safety professionals (see Initial Brief at 32, 35, & 45) **<u>indisputably prove</u>** that commercial motor vehicle size and weight regulations are <u>related</u> to motor carrier safety by the laws of physics. *Defendants* have offered no authority, argument, or expert opinion to support their claim that commercial motor vehicle size and weight regulations are *not* related to motor carrier safety. One cannot prove a negative, therefore <u>all</u> Chapter 311 powers <u>must</u> be transferred to FMCSA under 49 U.S.C. § 113(f)(1) and the *Motor Carrier Safety Act* <u>must</u> be considered before promulgating rules under this section. 49 U.S.C. § 31136(a).

The DC Court of Appeals has ruled,

> "It may be the case, for example, that driving for extended periods of time and sleep deprivation cause drivers long-term back problems, or harm drivers' immune systems. The agency may of course think that these and other effects on drivers are not problematic (or are outweighed by other considerations, like cost), but if so it was incumbent on it to say so in the rule and to explain why."
> *Public Citizen v. FMCSA*, 374 F.3d 1209, 1218 (D.C. Cir. 2004).

*Defendants* claim in their Memorandum at 8 that size and weight limitations are not "the type of motor carrier or motor carrier safety oversight that Congress intended to be delegated to the FMCSA." Congress says:

> If the Secretary does not prescribe regulations on commercial motor vehicle safety under [§ 31136], regulations on commercial motor vehicle safety prescribed by the Secretary before October 30, 1984, and in effect on October 30, 1984, shall be deemed in this subchapter to be regulations prescribed by the Secretary under this section.
> 49 U.S.C. § 31136(d)

*Defendants* do not dispute that duties and powers vested in the Secretary by § 31136 were transferred to FMCSA as required in § 113(f)(1). 64 FR 56270. Nor do they dispute that § 31111 through § 31114 are found in Chapter 311 which is titled "<u>Commercial Motor Vehicle Safety</u>." Nor do they dispute that FHWA's size and weight limitations promulgated under Chapter 311 authority in 23 C.F.R. § 658 were in effect on October 30, 1984. Nor do they dispute that the Secretary failed to prescribe the required safety standards for safety equipment, weight of load, and safer operating methods

9

such as intermodalism required under § 31136(a) and demanded in my petition filed under § 30162. Therefore, FMCSA now has authority over the size and weight limitations in 23 C.F.R. § 658—not FHWA. "A duty or power specified in Subsection (f)(1) may only be transferred to another part of the Department when specifically provided by law." 49 U.S.C. § 113(g).

### ii. FHWA's Ban On Intermodal Vehicles and Modern Safety Devices Is Not Statutorily Mandated and Must Be Vacated

*Defendants* claim at 9 that "FHWA lacks authority to change the statutorily mandated standards." For the reason stated above, I agree, but this case is not about statutorily mandated standards. It is about "Exclusion of Safety and Energy Conservation Devices" under 49 U.S.C. § 31113(b) that "the Secretary decides is necessary for safe and efficient operation of a commercial motor vehicle" and idle reduction systems mandated in Section 756(c) of *The Energy Policy Act of 2005* (Pub. L. 109-58, 119 STAT. 832).

I claim that intermodalism is necessary for safe and efficient operation of commercial motor vehicles. **The Secretary's own statistics** prove that railroads are safer than long haul trucks. As I cited in my Initial Brief at 50, only 26 locomotive occupants were killed from 1995 to 1997, 69 F.R. 63891, compared to 1,992 heavy truck occupants killed during the same three year period—a fatality rate seventy five times higher with three hundred times the

number of injuries.[7] 2,369 heavy truck occupants were killed in crashes from 2004 to 2006.[8] To get around the mandate from Congress that FMCSA "consider the assignment and maintenance of safety as its highest priority," 49 U.S.C. § 113(b), the Federal Highway Administration violated § 113(g) by changing long standing references to the "Office of Motor Carriers" (now known as FMCSA) to refer to FHWA in 23 C.F.R. § 657. 72 FR 7747. A.24. B-12. Vacatur is needed because FHWA is coercing states to violate truckers' 14th Amendment rights to safety in the workplace by robbing FMCSA of the power to enforce § 31113(b) and by replacing FMCSA's performance based definition of "*Commercial motor vehicle*" in 49 CFR § 383.5 with FHWA's design based definition in § 658.5—requiring states to treat intermodal vehicles as if they were long haul trucks rather than exempting them from regulation as mandated in 49 U.S.C. §§ 13503(b)(1) & 13506(a)(11).

Like any organization of fallible human beings, Congress sometimes makes mistakes and it becomes necessary to clarify a statute that is being misinterpreted. For this reason, Congress amended Section 127(a) of title 23 in *The Energy Policy Act of 2005* (119 STAT. 832) by designating the first through eleventh sentences as paragraphs. As I said in my Reply Brief at 18,

---

[7] Traffic Safety Facts 1995-1997 Large Trucks, www-nrd.nhtsa.dot.gov
[8] Traffic Safety Facts 2004-2006 Large Trucks, www-nrd.nhtsa.dot.gov

the agency failed to consider the amendment's effect of converting what had been subordinate sentences of a <u>single paragraph</u> into separate subsections of law. In a paragraph, subordinate sentences only serve to clarify the topic sentence. Separate subsections must be given equal weight. A sentence fragment in § 127(a)(2)(2) should not be construed to contradict § 127(a)(1) or make it superfluous. Where the principal dispute relates to the meaning of a statutory term, courts and not administrators are relatively more expert.

> *Barlow v. Collins,* 397 US 159 (1970).

No one objects to an 80,000 pound weight limit if it is needful under 23 U.S.C. § 315 as long as intermodal vehicles are exempt and the Secretary also prescribes cargo weight limits low enough that truckers will not be penalized for installing modern safety devices, but *Defendants* have not offered any authority, argument, or expert opinion to support their claim that compelling states to ban intermodal vehicles and modern safety devices has any benefit whatsoever either for highway safety or preservation, so the rules violate truckers' 14th Amendment rights and must be vacated.

> When constitutional questions are at issue, availability of judicial review is presumed and the court will not read the statutory scheme to take the extraordinary step of foreclosing jurisdiction unless Congress's intent to do so is manifested by clear and convincing evidence.
> *Ralpho v. Bell,* 569 F2d 607(1977).

## III. Conclusion

*Defendants* ask the Court to dismiss this suit so they can carry on business as usual denying truckers like me our rights to safety in the work place in violation of 49 U.S.C. § 113(b). The Court of Appeals has already decided that it is in the interest of justice for District Court to hear my case because some possibility exists that the Secretary will reconsider FHWA's ban on modern safety devices, restoring the value of my intellectual property, if the rules are vacated and/or remanded to FMCSA. Accordingly, for all of the reasons stated herein, Defendants' Motion to Dismiss should be denied.

Respectfully Submitted

_____

William B. Trescott

Inventor of:
*Self-loading Vehicle for Shipping Containers*
(U.S. Pats. 6,910,844 & 6,840,724)
*Automatic Intermodal Railway Car Coupler*
(U.S. Pats. 6,776,299 & 7,070,062)
*Child Safe Stackable Shelf Bin*
(U.S. Pat. 6,494,313)
*www.truckingvideo.com*
8028 Farm to Market Road 457
Bay City, Texas 77414
(979) 244-3134

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM B. TRESCOTT )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>THE FEDERAL HIGHWAY )<br>ADMINISTRATION, )<br>THE SECRETARY OF )<br>TRANSPORATION, )<br>and THE UNITED STATES, )<br>)<br>*Defendants*. ) | No. 08-0731 HHK<br><br>(formerly 07-1327) |

ORDER

UPON CONSIDERATION of the Defendant's Motion To Dismiss, the opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendant's Motion is denied;

SO ORDERED

_____
UNITED STATES DISTRICT JUDGE

Copies to:

William B. Trescott
8028 Farm to Market Road 457
Bay City, Texas 77414

Beverly M. Russell
Assistant US Attorney
DC Civil Division
555 Fourth Street NW
Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM B. TRESCOTT | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 08-0731 HHK |
| THE FEDERAL HIGHWAY ADMINISTRATION, | ) | |
| THE SECRETARY OF TRANSPORATION, | ) | (formerly 07-1327) |
| and THE UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT

As an independent inventor, I have paid thousands of dollars in patent application fees, issue fees, and attorney fees to obtain five patents which appear to have been made worthless as a result of *Defendants'* inaction. In addition, I have lost tens of thousands of dollars in income during the time I have been forced to remain unemployed while developing this technology.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signature] 6-16-8*

William B. Trescott

## CERTIFICATE OF SERVICE

I, William B. Trescott, hereby certify that I caused to be served a copy of the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, Proposed Order, and Affidavit on the following by first class mail:

James Ray
Chief Counsel
Federal Highway Administration
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

Beverly M. Russell
Assistant US Attorney
DC Civil Division
555 Fourth Street NW
Washington, D.C. 20530

D.J. Gribbin
General Counsel
U.S. Department of Transportation
1200 New Jersey Ave. SE
Washington, D.C. 20590-9898

Michael B. Mukasey
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

_/s/ Wm BTR 6-16-8_
William B. Trescott